COPY

1  Robert A. Bailey (# 214688)
   rbailey@afrct.com
2  Grace B. Kang (# 229464)
   gkang@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Telephone: (626) 535-1900
   Facsimile: (626) 577-7764
6
7  Attorneys for Defendant
   WELLS FARGO BANK, N.A., successor
   by merger with Wells Fargo Bank
8  Southwest, N.A., f/k/a Wachovia Mortgage,
   FSB, f/k/a World Savings Bank, FSB
9  ("Wells Fargo") (sued erroneously as
   "World Savings, Inc.") and GOLDEN
10 WEST SAVINGS ASSOCIATION
   SERVICE CO. a wholly-owned subsidiary
11 of Wells Fargo Bank, N.A. ("Golden West")
   (collectively "Wells Fargo")
12

ORIGINAL
FILED

JAN ⅟ 1 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

15  CHARLAMAINE LOZANO,                 CV12 NO.:  0 1 8 3

16              Plaintiff,

17  v.                                  **NOTICE OF REMOVAL PURSUANT TO
                                        28 U.S.C. § 1332**
18                                      **[DIVERSITY JURISDICTION]**
    WELLS FARGO BANK, N.A.;
19  WASHINGTON MUTUAL BANK; WORLD
    SAVINGS, INC.;
20  GOLDEN WEST SAVINGS ASSOCIATION
    SERVICE CO.;
21  NDEX WEST, LLC;
    LSI TITLE COMPANY;
22  LPS AGENCY SALES AND POSTING, INC.;
    and, DOES, 1
23  through 100, inclusive,

24              Defendants.

25

26

27      TO PLAINTIFF, THE CLERK OF THE ABOVE-ENTITLED COURT AND THE

28  HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:



1    PLEASE TAKE NOTICE that defendant Wells Fargo Bank, N.A., successor by merger

2   with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB, formerly

3   known as World Savings Bank, FSB ("Wells Fargo") (sued erroneously as "World Savings,

4   Inc.") and Golden West Savings Association Service Co. ("Golden West"), hereby provides this

5   Notice of Removal, based on diversity of citizenship, pursuant to 28 U.S.C. § 1332 . The action

6   is hereby removed to this Court from the state court, as more particularly set forth below.

7   **1.    THE STATE COURT ACTION.**

8    On December 2, 2011, the Complaint in Case No. CIV510053 entitled as captioned

9   above was filed with the Superior Court of the State of California, County of San Mateo (the

10   "State Court Action"). A copy of the Complaint is attached hereto as **Exhibit A**. Attached

11   collectively hereto as **Exhibit B**, are all other papers in Wells Fargo's possession either filed by

12   Plaintiff or issued in the State Court Action.

13   **2.    JURISDICTION.**

14    This Court has jurisdiction of this case under 28 U.S.C. § 1332 because plaintiff's

15   citizenship and that of Wells Fargo Bank, N.A., the only real-party-in-interest and non-

16   fraudulently joined defendant in this action, is entirely diverse and the amount in controversy

17   exceeds $75,000.00.

18   **3.    DIVERSITY OF CITIZENSHIP.**

19        **A. Plaintiff Is A Citizen Of California.**

20    Plaintiff Charlamaine Lozano is a California citizen based on domicile, as he pleads

21   ownership of property located at 2465 Erin Place, South San Francisco, CA 94080 (the

22   "Property") and residency in South San Francisco, California in San Mateo County (Complaint

23   "Comp." ¶¶ 2, 6, 10). Upon information and belief, Plaintiff resides in California with the

24   intention to remain indefinitely. "A person's domicile is [their] permanent home, where [they]

25   reside with the intention to remain or to which [they] intend to return." *See e.g., Kanter v.*

26   *Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. Cal. 2001); *Heinz v. Havelock*, 757 F. Supp.

27   1076, 1079 (C.D. Cal. 1991) (residence and property ownership are factors for domicile in

28   diversity jurisdiction); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie
2  domicile.").

3       Plaintiff's citizenship is also demonstrated by his personal bankruptcy filing in this
4  District. On January 4, 2011, Plaintiff filed a Voluntary Petition in the United States Bankruptcy
5  Court, Northern District of California, Petition No. 11-30034. Attached as **Exhibit C** is a true
6  and correct copy of the bankruptcy petition. Plaintiff averred that his street address was 2475
7  Erin Place, South San Francisco, CA 94080, and his county of residence was San Mateo County.
8  At the section entitled "Information Regarding the Debtor-Venue" on page two of the Petition,
9  he checked as the applicable box that "Debtor has been domiciled or has had a residence,
10  principal place of business, or principal assets in this District for 180 days immediately
11  preceding the date of this petition or for a longer part of such 180 days than in any other
12  District." Ex. C, p. 1, 2. That domicile made this district the appropriate venue for a personal
13  bankruptcy under 28 U.S.C. § 1408 , and further establishes that Plaintiff is a citizen of the State
14  of California for diversity purposes.

15      **B. Wells Fargo Is A Citizen Of South Dakota.**

16      Pursuant to 28 U.S.C. § 1348, Defendant Wells Fargo as a national banking association,
17  is a citizen of the state where its main office is located. 28 U.S.C. § 1348; *Wachovia Bank v.*
18  *Schmidt,* 546 U.S. 303, 306-307 (2006) (main headquarters of a national association is the sole
19  consideration for citizenship in diversity jurisdiction, without regard to where it has offices or
20  branches.). Wells Fargo is a citizen of South Dakota, with its main office located in Sioux Falls,
21  South Dakota. Attached as **Exhibit D** are true and correct copies of the FDIC Profile and the
22  Articles of Association for Wells Fargo as issued by the Office of the Comptroller of the
23  Currency Administrator of National Banks, reflecting that Wells Fargo is headquartered in Sioux
24  Falls, South Dakota.

25      Numerous cases have affirmed that Wells Fargo is a citizen of South Dakota for purposes
26  of diversity. *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010)
27  ("Wells Fargo is a citizen of South Dakota for purposes of diversity."); *DeLeon v. Wells Fargo*
28  *Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. June 9, 2010) ("Wells Fargo is not a citizen

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  of California . . . . Consequently, the court concludes that Wells Fargo is a citizen of the state in

2  which its main office, as specified in its articles of association, is located"). *See also, Tse v.*

3  *Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796, at *8 (N.D. Cal. Jan. 19, 2011) ("Wells

4  Fargo is a citizen of South Dakota" denying motion to remand.); *Atienza v. Wells Fargo Bank,*

5  *N.A.*, 2011 U.S. Dist. LEXIS 1738, at *6 (N.D. Cal. Jan. 4, 2011) ("Thus, Wells Fargo is a

6  citizen of South Dakota for purposes of diversity jurisdiction."); *Giordano v. Wachovia*

7  *Mortgage, FSB*, 2010 U.S. Dist. LEXIS 136284, at *5 (N.D. Cal. Dec. 14, 2010) (finding Wells

8  Fargo is a citizen of South Dakota; denying motion for remand): *Cal. ex rel. Bates v. Mortgage*

9  *Elec. Registration Sys.*, 2010 U.S. Dist. LEXIS 81650, at *3–4 (E.D. Cal. July 21, 2010) (Wells

10  Fargo is citizen of South Dakota); *Silva v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

11  64636, at *6 (C.D. Cal. June 16, 2011) ("Wells Fargo's main office is in South Dakota. It is

12  accordingly, a citizen of South Dakota." (citations omitted)); *Albarran v. Wells Fargo Bank,*

13  *N.A.*, 2011 U.S. Dist. LEXIS 59635, at *4 (C.D. Cal. May 26, 2011) ("Wells Fargo is a citizen of

14  South Dakota because Wells Fargo's main office, as set forth in its articles of association, is

15  located in Sioux Falls, South Dakota."); *Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist.

16  LEXIS 52930, at *6–7 (C.D. Cal. May 17, 2011) ("Thus, Wells Fargo is a citizen of South

17  Dakota. The Court is accordingly satisfied what diversity jurisdiction exists in this case.");

18  *Taguinod v. World Sav. Bank, FSB,* 2010 U.S. Dist. LEXIS 140509, at *4 (C.D. Cal. Dec. 2,

19  2010) (Wells Fargo is deemed to be a citizen of South Dakota.); *Cochran v. Wachovia Bank,*

20  *N.A.*, 2010 U.S. Dist. LEXIS 38379, at *3 (C.D. Cal. Mar. 9, 2010).[1]

21

22  [1] In *Mount v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 98193, at *4 (C.D. Cal. Nov. 24,

23  2008) a court in the Central District of Califomia held that Wells Fargo was a citizen of
California because of its principal place of business. *See also Saberi v. Wells Fargo Home*

24  *Mortgage*, 2011 U.S. Dist. LEXIS 5286, at *7–8 (S.D. Cal. Jan. 20, 2011) (following *Mount*'s
principal place of business test). However, the *Mount* Court reversed itself in *Kasramehr v.*

25  *Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 52930, at *6 (C.D. Cal. May 17, 2011),
concluding that Wells Fargo is a South Dakota citizen because pursuant to "[28 U.S.C.] § 1348, a

26  national banking association is a citizen of the state of its main office as designated in its articles
of association, and not also a citizen of the state of its principal place of business. Thus, Wells

27  Fargo is a citizen of South Dakota."

28  Specifically, the Court held that the principal place of business provision in 28 U.S.C.
§ 1332(c)(1), applicable to state-chartered corporations, did not come into existence until ten

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    i.   **The Eighth Circuit Correctly Decided The Issue.**

2    Recently, the Eighth Circuit rejected the principal place of business test in Section 1348

3    because it was not a citizenship test until ten years after Section 1348 was enacted:

4    
> In 1948, when Congress last amended § 1348, it had not yet
5    created principal-place-of-business citizenship. . . . [T]he term
"located" referred to the state in which the national bank had its
6    main office . . . . [W]hen Congress introduced principal-place-of-
business citizenship for state banks and corporations in §
7    1332(c)(1), it made no reference to jurisdictional parity, nor to
national banks or § 1348. And nothing in § 1348 indicates that it
8    would incorporate by reference any subsequent change in the
statutes governing jurisdiction over state banks and corporations.
9    These circumstances strongly suggest that . . . Congress . . . left
[the jurisdiction landscape] of national banks undisturbed.

10   
> Had Congress wished to retain jurisdictional parity in 1958, it
11   could have unequivocally done so. It did not, and consequently the
concept no longer applies. Whether it ought to be revived is a
12   policy question for Congress, not the federal courts. We will not
import a jurisdictional concept into § 1348 that was unknown at
13   the time of its adoption. Accordingly, we hold that, pursuant to
§ 1348, a national bank is a citizen only of the state in which its
14   main office is located.

15   *Wells Fargo Bank, N.A., v. WMR e-PIN, LLC*, 653 F.3d 702, 708-710 (8th Cir. 2011)(emphasis

16   added) ("*WMR*"). Accordingly, Wells Fargo is a citizen of only South Dakota.

17   ii.   ***WMR's* Dissent Erroneously Relied on *American Surety.***

18   The *WMR* dissent erroneously relied on *American Surety v. Bank of Cal.*, 133 F.2d 160

19   (9th Cir. 1943), that a national bank's principal place of business determines citizenship. *WMR*,

20   

21   

22   (10) years after Section 1348 was enacted, applicable to national banking associations. If
"Congress had intended for national banks likewise to be deemed citizens of the states of their
23   principal places of business, it likely would have similarly amended § 1348 to contain a
reference to national banks' 'principal places of businesses.' Its failure to do so suggests that
24   Congress did not intend for a national bank to be deemed a citizen of the state of its principal
place of business." *Id.* at *5–6. *Kasramehr* effectively vacated *Mount* and its principal place of
25   business test, thereby vacating all decisions following *Mount*, such as *Saberi*, *Gutterman v.
Wachovia Mortgage*, 2011 U.S. Dist. LEXIS 74521 (C.D. Cal. Mar. 31, 2011); *Goodman v.
26   Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 63165 (C.D. Cal. June 1, 2011); *Naumoff v.
Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 128045 (C.D. Cal. Nov. 2, 2011) and *Stewart v.
27   Wachovia Mortgage, FSB*, 2011 U.S. Dist. LEXIS 85822 (C.D. Cal. Aug. 2, 2011). *See also
McNeely v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 126970, at *9 (C.D. Cal. Nov. 1,
28   2011) (noting *Mount's* reversal and finding only South Dakota citizenship).

5                                                    NOTICE OF REMOVAL

1    653 F.3d at 716. *American Surety* held:

> No case defining "located," in this connection, has come to our
> attention . . . . There would appear to be a close analogy between
> such a bank and a corporation national in scope. The citizenship of
> a corporation is fixed by its principal place of business, a rule
> which prevails even though it extends its field of endeavor into
> other states under the sanction of the laws of such other states. *St.
> Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545; *Southern
> Ry. Co. v. Allison*, 190 U.S. 326 (citations omitted). In addition, a
> logical interpretation of the phraseology of 28 U.S.C.A. § 41(16)
> leads to the conclusion that the "States in which they [national
> banking associations] are <u>respectively located</u>" are those states in
> which their principal places of business are maintained.

*American Surety*, 133 F.2d at 161-62 (emphasis added). *American Surety* only applied the

principal place of business test, not the main office test. *See generally id.*

     After *Schmidt*, few California District Courts have held *American Surety* viable. As

detailed below, relying on *American Surety* is erroneous because: (a) it is irreconcilable with

*Schmidt*; (b) *American Surety's* premise that "located" is undefined was superseded by statute in

1994, as *Schmidt* indicated; (c) according to the *Hertz* Supreme Court, *American Surety* was

wrong to apply the <u>principal place of business test was incorrect</u> according to the Supreme Court

in; and, (d) *American Surety* is not precedential because it "assumed" that the principal place of

business test was the correct.

### 1. *American Surety* is Irreconcilable With *Schmidt*.

     The first case to rely on *American Surety*, post-*Schmidt*, is *Guinto v. Wells Fargo Bank,

N.A.,* 2011 U.S. Dist. LEXIS 114986 (E.D. Cal. Oct. 4, 2011).[2] *Guinto* held that *American

Surety* is viable because *Schmidt's* footnote 9 did not foreclose applying the principal place of

business test <u>in conjunction</u> with the main office test. *Id.*, at 11 ("it was not necessary [in

*Schmidt* to decide] . . . whether the bank <u>was also</u> located in North Carolina <u>on account of the</u>

---

[2] Since WMR was issued on September 2, 2011, the following decisions in California have
adopted the dissent's view that American Surety continues to be viable: Guinto, supra; Uriarte v.
Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 127497 (S.D. Cal. Nov. 3, 2011); and
Lauenstein v. World Sav. Bank, FSB, 2011 U.S. Dist. LEXIS 129922 (E.D. Cal. Nov. 8, 2011).
The later cases simply follow Guinto's reasoning on American Surety. Other than these cases,
American Surety has not been cited in any federal case post-Schmidt, further evidence of WMR
dissent's error.

1  location of its principal place of business . . . . This court believes that Footnote 9 is too slender

2  a read [to not follow *American Surety*]") (emphasis added). *Guinto* fundamentally misread

3  *Schmidt* by accepting the use the principal place of business as the sole test of citizenship.

4  *Schmidt* did not. *Schmidt*'s reference to the principal place of business test was with the main

5  office test. *Id.* at fn. 8 & 9.

6      However, *American Surety* applied only the principal place of business test. This is

7  inconsistent with *Schmidt*, which unequivocally adopted the "at least main office" test. *Id.* at

8  307, 318. At most, *Schmidt* allowed the possibility that the "main office plus principal place of

9  business" test could be used. *Id.* at n. 8. (emphasis added). Accordingly, *American Surety* and

10 *Schmidt* held for single, but different standards for citizenship. Using the principal place of

11 business test while excluding the main office test, as *American Surety* did, is irreconcilable with

12 *Schmidt*. *Schmidt* should prevail.

13     In 2007, the Ninth Circuit determined a bank's citizenship to be in Ohio based on its

14 main office location. *Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994, 997 (9th Cir. 2007)(citing

15 *Schmidt*, 546 U.S. at 305–307). Notably, *Lowdermilk* did not use the principal place of business

16 test, instead using the main office test. Presumably, *Lowdermilk* should have applied *American*

17 *Surety's* principal place of business test, but it did not. Accordingly, Lowdermilk Court may not

18 have considered *American Surety* or the principal place of business test as viable in light of

19 *Schmidt*.

20     In fact, *American Surety* probably applied the principal place of business test simply as a

21 convenient, but incorrect substitute, for the main office test. As detailed in *Schmidt*'s footnote 2

22 (at 307), national banks could not operate across state lines until 1994, meaning that, in 1943, a

23 national bank's principal place of business and main office were in the same state.

24         **2. *American Surety*'s Premise That "Located" Is Undefined Was**

25         **Superseded By Statute In 1994, As *Schmidt* Indicated.**

26     *American Surety* was not given definition for "located" in the predecessor statute to

27 Section 1348. "No case defining 'located,' in this connection, has come to our attention."

28 *American Surety,* 133 F.2d at 161–62. However, as pointed out in footnote 1 in *Schmidt*: **"(B)**

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 **Home State.** The term "Home State" means the State in which the main office of a national

2 bank is located." 12 U.S.C. § 36(g)(3)(B) (emphasis added). "State" appears only in the singular

3 form. *Id.*

4     This provision was added by the Riegle-Neal Interstate Banking Act of 1994 (the "1994

5 Act"), § 103, 103 P.L. 328; 108 Stat. 2338, 2352 ("(12 U.S.C. 36) is amended by inserting after

6 subsection (f) (as added by section 102(b)) the following new subsection: '(g) State 'Opt-In'

7 Election To Permit . . . ."). While the 1994 Act permitted national banks to operate across state

8 lines for the first time (*Schmidt*, 546 U.S. at 307, n.2), it simultaneously defined, for the first time

9 ("new subsection"), the "Home State" by where its "main office . . . is located." The *Schmidt*

10 Supreme Court used the "Home State" or its "main office" as the national bank's citizenship.

11     *Guinto* missed *Schmidt's* Section 36(g)(3)(B) reference. *Guinto* held that Section 1348's

12 absence of the principal place of business phrase does not hinder applying the test to the statute

13 since the statute only refers to "locat[ion]" and not the "main office." *Guinto,* 2011 U.S. Dist.

14 LEXIS 114986, *11, n. 13. However, *Guinto* failed to realize that "main office" is referenced

15 with "locat[ion]" in Section 36(g)(3)(B). *See Schmidt,* 546 U.S. at 307, n. 1. Accordingly,

16 *American Surety*'s premise to look to corporations for an "analogy" on citizenship was

17 superseded by Section 36(g)(3)(B) in 1994. *American Surety,* 133 F.2d at 162; *See Schmidt*, 546

18 U.S. at 307, n. 1.

19         **3. According to the Supreme Court, *American Surety* Was Wrong In**

20              **Applying The Principal Place of Business Test to a Corporation.**

21 According to the Supreme Court, applying the principal place of business test to corporations

22 was incorrect. *The Hertz Corp. v. Friend,* 130 S. Ct. 1181 (2010).

23              **a. The Supreme Court Repeatedly Confirmed the Principal Place**

24                  **of Business Test Did Not Exist Until 1958.**

25     The *Hertz* Supreme Court concluded "By 1928 this Court made clear that the 'state of

26 incorporation' rule was virtually absolute." *Id.* at 1188 (citing *Black and White*, 276 U.S. 518,

27 522-525 (1928) as "("refusing to question corporation's reincorporation motives....)").

28     The Supreme Court conducted a detailed historical analysis of the origins of the principal

8                                         NOTICE OF REMOVAL

1  place of business test for citizenship. *Hertz*, 130 S. Ct. at 1187–90. That analysis showed that
2  the courts formulated only the "state of incorporation" test for corporations (*Id.* at 1187–88.) and
3  that, after several failed legislative attempts between 1928 and 1957, Congress created, purely by
4  statute, the principal place of business test for citizenship: "in 1958, Congress both codified the
5  courts' traditional place of incorporation test and also enacted into law . . . [the] 'principal place
6  of business' language." *Id.* at 1190 (emphasis added); 28 U.S.C. § 1332 at Notes to 1958
7  amendment ("added new subsecs. (b) and (c)"). In other words, the principal place of business
8  test had no common law precursor.

9  While *Hertz* does go on to discuss the earliest meanings of the "principal place of
10 business" phrase in the bankruptcy context (*Id.* at 1190), those cases necessarily dealt with
11 venue—not jurisdiction. The Constitution gives federal courts original and exclusive jurisdiction
12 over bankruptcy. Const. Art. III § 2, and Art. I § 8 ("Congress shall have the Power [¶] To
13 establish . . . uniform Laws on the subject of Bankruptcies throughout the United States"); *see*
14 *also* 28 U.S.C. § 1334 ("district courts shall have original and exclusive jurisdiction of all cases
15 under Title 11"). The principal place of business concept for bankruptcy remains in the venue
16 section. 28 U.S.C. § 1408 ("Venue of Cases Under Title 11. . . . district court for the district
17 (1) in which . . . principal place of business in the United States, or principal assets in the United
18 States . . . .) (emphasis added).

19 The 1958 origins of principal place of business for jurisdiction had also been confirmed
20 separately in *Schmidt*: "A business organized as a corporation, for diversity jurisdiction
21 purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and, since
22 1958, also 'of the State where it has its principal place of business.' § 1332(c)(1)." *Schmidt*,
23 546 U.S. at 306 (emphasis added). In other words, *American Surety*'s application of the
24 principal place of business test in 1943 is irreconcilable with the Supreme Court's analysis in
25 *Hertz* (and *Schmidt*) and must be ignored.

26 Unfortunately, *Guinto* appears to have relied on *American Surety* as good law as to the
27 timing of when the principal place of business test came about for a corporation to depart from
28 *WMR*. *Guinto* stated: "The Court is aware of [WMR] . . . WMR e-Pin, reasoning directly from

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

9                                                        NOTICE OF REMOVAL

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   the language and history of Section 1348, found that it does not permit the use of the 'principal

2   place of business' as the 'location' of a national bank. That reasoning is precluded in the Ninth

3   Circuit by *American Surety*." *Guinto*, 2011 U.S. Dist. LEXIS 114986, at *12–13, n. 15

4   (underline added).

5       The primary reasoning of *WMR* is that the principal place of business test for citizenship

6   did not come about until 1958, ten years after Section1348 was enacted in 1948. As

7   demonstrated above, *American Surety* was incorrect as to the timing of the principal place of

8   business test for a corporation, and *Guinto*'s reliance thereon was in error. *See also Uriarte v.*

9   *Wells Fargo Bank, N.A.*, 2001 U.S. Dist. LEXIS 127497, at *19 (S.D. Cal. Nov. 3, 2011) ("Wells

10  Fargo's argument that 'principal place of business' as a test for corporate citizenship did not

11  arise until the enactment of § 1332(c)(1) in 1958 appears to be factually inaccurate. In 1943, the

12  Ninth Circuit . . . [*American Surety*]. Reasoning that the citizenship of corporation was 'fixed by

13  its principal place of business,' the Ninth Circuit . . . .") (emphasis added).

14      *Guinto* and *Uriarte* were based on bad law—*American Surety*.

15                      **b.   American Surety Misread St. Louis and Southern.**

16      *American Surety* ignored *Black and White*'s (1928) "state of incorporation" rule and

17  relied on two older cases, *St. Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545 (1896) and

18  *Southern Ry. Co. v. Allison*, 190 U.S. 326 (1903), holding that citizenship for a corporation is its

19  principal place of business. *American Surety*, 133 F.2d at 162.

20      *American Surety* dismissal of *Black and White* is improper. In fact, *St. Louis* and

21  *Southern* failed to support *American Surety*'s holding that the test for citizenship is a

22  corporation's principal place of business. The principal place of business phrase is reference

23  only once in passing. *St. Louis*, 161 U.S. at 558.

24      Both cases held that the "state of incorporation" was the rule then, as confirmed twice by

25  the Supreme Court. *St. Louis* and *Southern* held that the state of incorporation remains the state

26  for citizenship, even when a corporation files charter in a second state becoming, by the law of

27  the second state, a "domestic" corporation. *St. Louis*, 161 U.S. at 564–65.

28
        So it seems that a corporation may be made what is termed a
        domestic corporation . . . by filing a copy of its charter and by-laws
                            10                          NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

> with the Secretary of State, yet such fact does not affect the character of the original corporation. It does not thereby become a citizen of the State . . . so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship.

*Southern*, 190 U.S. at 337 (emphasis added).

### 4. *American Surety* Is Not Precedential Because It "Assumed" The Principal Place of Business Test Was Correct.

Pursuant to Ninth Circuit law *American Surety* is not precedential. *American Surety* merely assumed that the principal place of business test was the correct standard because it was not aware of any (1943) definition of "located" and (erroneously) used the principal place of business test only by analogy. *Id.* at 161–62 ("No case defining "located", in this connection, has come to our attention. . . . There would appear to be a close **analogy** between such a bank and a corporation national in scope.").

The Ninth Circuit held that federal law applied in diversity actions, while in 1974, it previously assumed that state law applied. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). The Court held:

> To the extent we have previously applied state law, we did so without deciding whether state or federal law controlled. Thus, those decisions are **not controlling**. *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275-76 (9th Cir. 1990) (court not bound by prior cases in which the question was assumed without decision). . . . *Prudential Ins. Co. of Am. v. Fifty Associates*, 503 F.2d 925, 930 (9th Cir. 1974) . . . .

*LaPeter*, 563 F.3d at 843, n. 12 (emphasis added).

Instead of adhering to prior decisions by assumption, *LaPeter* followed recent reasoned decisions from other Circuits. *Id.* at 842–43. Accordingly, the Eighth Circuit's *WMR* decision should be followed.

Similarly, *American Surety* regarding citizenship can fairly be described as "a holding 'made casually and without analysis . . . uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention . . . .'" *Parent V.S. v. Los Gatos-Saratoga Joint Union H.S. Dist.*, 484 F.3d 1233, n.1 (9th Cir. 2007) (original ellipses) (emphasis added) (applying de novo standard where previous

NOTICE OF REMOVAL

1  Ninth Circuit decision applied abuse of discretion standard "without discussion.").

2      That *American Surety*'s citizenship portion was "made causally and without analysis" is
3  shown by the few paragraphs the Court used in addressing the citizenship question. *American*
4  *Surety*, 133 F.2d. at 162. The citizenship question was also "merely a prelude to another legal
5  issue." *Parent V.S., supra*. After citizenship, *American Surety* went on to thoroughly analyze
6  subrogation. *Id.* at 162–165.

7      Based on the foregoing, Wells Fargo submits that *American Surety* contradicts the
8  Supreme Court, has been superseded by statute, and is not precedential here. Therefore, the
9  cases relying on *American Surety*, such as *Guinto, Lauenstein v. World Savings Bank, FSB*, 2011
10  U.S. Dist. LEXIS 129922 (E.D. Cal. Nov. 8, 2011), and *Uriarte*, were decided incorrectly and
11  should not be followed.

12      In summary, in addition to numerous unpublished decisions, the published decisions
13  uniformly hold that Wells Fargo is strictly a citizen of South Dakota, where it has its main office,
14  for purposes of diversity jurisdiction: *Wells Fargo Bank, N.A, v. WMR e-PIN, LLC*, 653 F.3d
15  702, 710 (8th Cir. 2011). In light of the abundance of authorities above, Wells Fargo is a citizen
16  of only South Dakota for diversity purposes.

17      **C.    Golden West's Citizenship Is To Be Ignored For Diversity Jurisdiction**
18          **Because It Is A Nominal Defendant And Has Been Fraudulently Joined.**

19      Defendant Golden West is a California corporation, yet it is a nominal party to be ignored
20  for diversity purposes. Golden West has no involvement in the subject matter of the litigation,
21  for plaintiff's suit strictly challenges the bank's right to enforce its security interest and conduct a
22  non-judicial foreclosure. Furthermore, Golden West filed a Declaration of Non-Monetary Status
23  ("DNMS") in the state court action on January 5, 2012 (attached as part of Exhibit B). Golden
24  West is merely the former trustee under the Deed of Trust recorded against the property. Indeed,
25  the complaint does not contain any factual allegations involving Golden West.

26      When testing the applicability of federal diversity jurisdiction, a court is not limited to the
27  four corners of the pleadings. *West America Corp. v. Vaughan-Bassett Furniture Co., Inc.*, 765
28  F.2d 932, 936 (9th Cir. 1985). Because plaintiff has offered absolutely no facts – and can never

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 offer any facts – that might suggest a viable cause of action against defendant Golden West, this
2 Court should disregard the citizenship of this entity. *See e.g., McCabe v. General Foods Corp.*,
3 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder of employee in wrongful termination case against
4 employer held a sham because state law provided that the employee was not liable).

5 "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v.*
6 *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *Morris v. Princess Cruises, Inc.*, 236
7 F.3d 1061, 1067-68 (9th Cir. 2001) ("one exception to the requirement of complete diversity is
8 where a non-diverse defendant has been 'fraudulently joined'"). A removing defendant may
9 submit facts showing that the resident defendant has "no real connection with the controversy."
10 *Ritchey*, 139 F.3d at 1318 (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-99
11 (1921)). Here, the facts establish that Golden West never had any relationship with plaintiff
12 (contractual or otherwise) and took no part in any of the actions of which plaintiff complains.
13 Plaintiff's action challenges the non-judicial foreclosure process and defendant NDEX is the
14 substituted trustee that it involved in this process.

15 In other words, there is no alleged or viable claim against Golden West and plaintiff
16 alleges no facts stating that Golden West acted for "its own personal advantage" as either an
17 agent or dual agent. *Nong v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 131890, at *4
18 (C.D. Cal. Nov. 22, 2010). Accordingly, it must be disregarded for the purposes of diversity
19 jurisdiction.

20 **D.     NDeX Is A Non-California Citizen That Has Been Fraudulently Joined.**

21 **i.   NDeX Is Not A California Citizen.**

22 Defendant NDeX West LLC ("NDeX") is the current trustee under the Deed of Trust. It
23 is a single member limited liability company organized in Delaware and headquartered in Texas.
24 Declaration of Renee Jackson on behalf of defendant NDeX West ("Jackson Dec."), a copy of
25 which is attached as **Exhibit E**.

26 A limited liability company is treated like a partnership for diversity purposes. Thus, the
27 Court looks solely at the citizenship of each member or partner of the LLC. *Carden v. Arkoma*
28 *Assocs.*, 494 U.S. 185, 192-196 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   894, 899 (9th Cir. 1990). As set forth in the Jackson Declaration, NDeX West is a single-
2   member limited liability company organized in Delaware and headquartered in Texas. National
3   Default Exchange Holdings, LP ("NDeX Holdings"), is the manager and sole member of NDeX
4   West, and is a Delaware limited partnership headquartered in Texas. The General Partner of
5   NDeX Holdings is National Default Exchange Management, Inc. ("NDeX Management"), a
6   Delaware corporation headquartered in Texas. American Processing Company, LLC ("APC"), a
7   limited liability company organized and headquartered in Michigan, owns 86% of both NDeX
8   Holdings and NDeX Management. The remaining 14% of the limited partner interest of NDeX
9   Holdings is owned by THP/NDEX AIV, L.P. a Delaware limited partnership, headquartered in
10  Minnesota ("THP LP"). One hundred percent of the general partnership interests of THP LP is
11  owned by THP/NDeX AIV Corp. ("THP Corp"), a corporation organized under the laws of
12  Delaware and headquartered in Minnesota. THP Corp is wholly owned by APC. APC is owned
13  94% by Dolan APC LLC ("Dolan APC"), a Delaware limited liability company headquartered in
14  Minnesota and 6% is owned by individuals, all of whom are residents of the State of Texas.
15  Dolan APC is wholly owned by The Dolan Company, a Delaware corporation, headquartered in
16  Minnesota. (Jackson Decl. ¶¶2-3.)

17      Accordingly, NDeX and its members and partners are Delaware, Texas, Michigan, and
18  Minnesota citizens. *Johnson*, 437 F.3d at 899 (citizenship of partnerships and limited liability
19  companies determined by the citizenship of its partners and members, respectively).

20              **ii.  NDeX's Citizenship Should Be Ignored For Diversity Jurisdiction.**

21      "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey*
22  *v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *Morris v. Princess Cruises, Inc.*, 236
23  F.3d 1061, 1067-68 (9th Cir. 2001) ("one exception to the requirement of complete diversity is
24  where a non-diverse defendant has been 'fraudulently joined.'"). Joinder of a non-diverse
25  defendant is fraudulent if "the plaintiff fails to state a cause of action against the [non-diverse]
26  defendant, and the failure is obvious according to the settled rules of the state." *Hamilton*
27  *Materials, Inc., v. Dow Chem. Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v.*
28  *General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Fraudulent joinder is also

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  conclusive where it is demonstrated that "there is no possibility that the plaintiff will be able to

2  establish a cause of action in state court against the alleged sham defendant." *Good v. Prudential*

3  *Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). Similarly, removing a defendant may

4  submit facts showing that the resident defendant has "'no real connection with the controversy.'"

5  *Ritchey,* 139 F.3d at 1318 (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-99

6  (1921)).

7      When testing the applicability of federal diversity jurisdiction, the Court is not limited to

8  the four corners of the pleadings. *West America Corp. v. Vaughan-Bassett Furniture Co., Inc.*,

9  765 F.2d 932, 936 (9th Cir. 1985); *Charlin v. Allstate Ins., Co.*, 19 F.Supp.2d 1137, 1140 (C.D.

10  Cal. 1998) (to ascertain whether a joinder is fraudulent, this Court may "look beyond the

11  pleadings").

12      **(a.)    Plaintiff Cannot State A Viable Claim Against NDeX In Its Capacity**

13            **As Trustee.**

14      The trustee's duties with respect to a foreclosure sale are set forth in California Civil

15  Code section 2924 *et seq.*

16            The trustee in nonjudicial foreclosure is not a true trustee with
            fiduciary duties, but rather a common agent for the trustor and
17            beneficiary. . . The scope and nature of the trustee's duties are
            exclusively defined by the deed of trust and the governing statutes.
18            No other common law duties exist. . . In short, the trustee . . .
            performs ministerial acts, which, when properly executed, result in
19            the transfer of title to the [trustee's sale] purchaser.
20

21  *Pro Value Properties, Inc., v. Quality Loan Service Corp.*, 170 Cal.App.4th 579, 583

22  (2009) (internal quotes and citations omitted; emphasis added).

23      Further, the foreclosure filings and trustee's sale are privileged, preventing a claim for

24  damages against the trustee. Civil Code §§ 47(c) and 2924(d). This privilege bars any tort claim

25  arising out of the statutorily required mailing, publication, and delivery of notices in non-judicial

26  foreclosure, and the performance of statutory non-judicial foreclosure procedures absent a

27  showing of malice. *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 339 (2008).

28      To the extent that Plaintiff's claims against NDeX are premised upon NDeX's conduct as

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   the substitute trustee under the deed of trust, the claims fail to state a viable cause of action

2   against NDeX. *See Nong,* 2010 U.S. Dist. LEXIS 131890, at *3-5 (upholding removal on

3   diversity grounds despite a California corporation being named as a defendant, under the

4   fraudulent joinder doctrine); see also, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022,

5   1025-28 (N.D. Cal. 2010) (Court held that a non-diverse foreclosure trustee was an uncontested

6   nominal defendant to be ignored for diversity purposes, and upheld the propriety of removal,

7   denying plaintiff's motion to remand). NDeX is therefore to be disregarded for diversity

8   purposes.

9              (b.)   **NDeX Is A Nominal Party By Virtue Of Its Declaration Of Non-**

10                    **Monetary Status.**

11          NDeX should be ignored for diversity jurisdiction analysis because it is a nominal

12  defendant that simply replaced Golden West, the original trustee on the Deed of Trust. NDeX

13  has no financial interest in the Property and is, therefore, fraudulently joined in this lawsuit.

14  NDeX's involvement with the foreclosure is strictly within its ministerial role as the substituted

15  trustee pursuant to the Deed of Trust.

16          Accordingly, NDeX because is a nominal defendant, no affirmative relief can be sought.

17  *Cabriales v. Aurora Loan Services*, 2010 U.S. Dist. LEXIS 24726, *2-3 , n.1 (N.D. Cal. Mar. 2,

18  2010). Even if it was considered, NDeX is diverse as a non-California citizen.

19          As established by the above facts, complete diversity of citizenship of the parties exists

20  pursuant to 28 U.S.C. § 1332(a), in that Plaintiff is a California citizen and Defendants Wells

21  Fargo and NDeX are citizens of South Dakota and Delaware, respectively.

22          **E.  The Agent Of The Trustee, LSI Title Company And Its Agent, LPS Agency Sales**

23                 **And Posting, Inc. Are Nominal Parties, Fraudulently Joined, And Should Be**

24                 **Ignored For Diversity**.

25          Defendants LSI Title Company ("LSI") and LPS Agency Sales and Posting, Inc.,

26  ("LPS") appears to have been named in this action as the purported "agent" of either Wells Fargo

27  or NDeX West, as no specific allegation of wrongdoing is pled against these entities. The crux of

28  LSI and LPS' connection with Plaintiff's grievances is that LSI and LPS are "a name listed on

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    the first Notice of Default and Notice of Trustee's Sale." (Comp., ¶¶ 9, 10).

2        In 2006, Plaintiff entered into a mortgage loan transaction with Wells Fargo (then known

3    as World Savings Bank, FSB). *See* Comp., Ex A, the Deed of Trust at issue, showing that the

4    original trustee was Golden West Savings Association Service Co. ("Golden West"). NDeX

5    West subsequently replaced Golden West and, in its role as trustee, caused foreclosure notices to

6    be recorded against the Property in accordance with the terms of the Deed of Trust. (*See*, Comp.,

7    Exs. F, B and C the Substitution of Trustee; the Notice of Default; and the Notice of Trustee's

8    Sale, respectively). LSI and/or LPS apparently facilitated the recordings for trustee NDeX West.

9        In a recent decision in the Central District, the court denied remand, where the agent of

10   trustee Cal-Western Reconveyance Corp. ("Cal-Western"), a California corporation, was named.

11   *Nong v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 131890 , at * 3-5 (C.D. Cal., Nov. 22,

12   2010). Under the fraudulent joinder doctrine, the Court upheld removal on diversity grounds

13   despite the fact that a California corporation was named as a defendant. There, the same

14   defendant named herein, LSI, acted the trustee Cal-Western's agent. But that local agent of Cal-

15   Western was properly ignored for diversity purposes. The same reasoning applies with equal

16   force here. No alleged nor viable claim exists against the trustee's agent. No claim is stated,

17   because the local defendant is not alleged to be acting for "its own personal advantage" as either

18   an agent or dual agent. *Nong*, 2010 U.S. Dist. LEXIS 131890 at *4-5. LSI thus is to be ignored

19   for diversity purposes.

20   **4.    AMOUNT IN CONTROVERSY.**

21       Generally, "[t]he amount in controversy is determined from the allegations or prayer of

22   the complaint." Schwarzer et al., *Fed. Civ. Pro. Before Trial,* ¶ 2:450 (2009) (citing *St. Paul*

23   *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which held that an inability to

24   recover an amount adequate to give the court jurisdiction does not oust the court of jurisdiction).

25       Moreover, "[i]n actions seeking declaratory or injunctive relief, it is well established that

26   the amount in controversy is measured by the value of the object of the litigation." *Hunt v.*

27   *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (superseded by statute on other

28   grounds as stated in *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  U.S. 544, 557 (1996)). "If the primary purpose of a lawsuit is to enjoin a bank from selling or
2  transferring property, then the property is the object of the litigation." *Reyes, et al. v. Wells*
3  *Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821 , at 12-13 (N.D. Cal. June 29, 2010). Where a
4  complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the
5  loan amount. *Nguyen,* 749 F. Supp. 2d at 1028-1029 (*citing Cabriales,* 2010 U.S. Dist. LEXIS
6  24726 at *9-10 and *Craver v. Nat'l City Bank*, 2009 U.S. Dist. LEXIS 98333 , at *3 (E.D. Cal.
7  Oct. 22, 2009).

8         The subject of this action is a $720,000 loan between Plaintiff and Wells Fargo's
9  predecessor, World Savings Bank, FSB. Comp., Ex A. Plaintiff seeks a "nominal,
10 compensatory and punitive damages in excess of $720,000.00 and/or an amount to be
11 determined at trial" Comp., Prayer, ¶ 8. Thus, the equitable relief alone exceeds the
12 jurisdictional minimum. In addition, Plaintiff seeks a determination to quiet title and a
13 temporary restraining order, preliminary injunction and permanent injunction. (Comp., Prayer
14 ¶¶ 4, 5).

15 **5.      THIS NOTICE IS TIMELY AND PROPERLY FILED.**

16        This Notice is timely, pursuant to 28 U.S.C. § 1446(b) . Wells Fargo was personally
17 served with the summons and complaint on December 13, 2011. Wells Fargo has not appeared
18 in the State Court Action except to file a Declaration of Non-Monetary Status on behalf of
19 Golden West, its wholly-owned subsidiary.

20        NDeX's Consent To Removal. Counsel for NDeX, confirms that it received service of
21 process of the State Court Action on December 20, 2011, via personal service, and appeared in
22 the State Court Action on January 5, 2012 by filing its DNMS (**Exhibit F**, attached hereto).
23 Wells Fargo is not required to obtain NDeX's consent to removal because it has been
24 fraudulently joined. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 (9th Cir. 1988)
25 (general requirement of consent does not apply to "nominal, unknown or fraudulently joined
26 parties"). Nevertheless, NDeX consents to this removal, as evidenced in the accompanying
27 Notice Of Consent To Removal.

28        Washington Mutual Bank ("Washington Mutual") appears in the caption but no specific

1  allegation of wrongdoing is pled against this party. Washington Mutual, LSI and LPS are a

2  fraudulently joined parties and no joinders are required from these parties. As there are no other

3  named defendants in this action, and no doe defendants are known or have been served, no

4  joinder of unserved defendants is required to perfect removal of the State Court Action.

5  *Salveson v. Western States Bankcard Ass'n.,* 730 F.2d 1423, 1429 (9th Cir. 1984).

6       Pursuant to 28 U.S.C. § 1446(a), Defendant files this Notice in the District Court of the

7  United States for the district and division within which the State Court Action is pending.

8       Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice with its attachments will promptly

9  be served on plaintiff in the State Court Action, and notice thereof will be filed with the clerk of

10  the San Mateo County Superior Court.

11       WHEREFORE, Wells Fargo hereby removes San Mateo County Superior Court Case

12  No. CIV510053 to the United States District Court for the Northern District of California – San

13  Francisco/Oakland division.

14                        Respectfully submitted,

15  Dated: January 12, 2012          ANGLIN, FLEWELLING, RASMUSSEN,
                                  CAMPBELL & TRYTTEN LLP

16

17                     By: _____

18                         Grace B. Kang
                            gkang@afrct.com
                         Attorneys for Defendant

19                         WELLS FARGO BANK, N.A., successor by
                         merger with Wells Fargo Bank Southwest, N.A.,

20                         f/k/a Wachovia Mortgage, FSB, f/k/a World
                         Savings Bank, FSB ("Wells Fargo") (sued

21                         erroneously as "World Savings, Inc.") and
                         GOLDEN WEST SAVINGS ASSOCIATION

22                         SERVICE CO. a wholly-owned subsidiary of
                         Wells Fargo Bank, N.A. ("Golden West")

23                         (collectively "Wells Fargo")

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

EXHIBIT A

ENDORSED FILED
SAN MATEO COUNTY

DEC 0 2 2011

Clerk of the Superior Court
By __T. Judd__
DEPUTY CLERK

1  CHARLAMAINE LOZANO
2  2475 ERIN PLACE
   SOUTH SAN FRANCISCO CA 94080
3  PLAINTIFF PRO SE

4

5  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

6  **FOR THE COUNTY OF SAN MATEO**

7  **CIV 5 1 0 0 5 3**

8  ) Case No._____

9  CHARLAMAINE LOZANO ) COMPLAINT FOR:

10 ) 1. WRONGFUL FORECLOSURE

11 Plaintiff,
12 ) 2. LACK OF STANDING &
   )    QUIET TITLE
13 )
   ) 3. FRAUDULENT
14 vs. )    MISREPRESENTATION

15 )

16 ) 4. VIOLATION OF BUSINESS
   )    AMD PROFESSIONS CODE
17 WELLS FARGO BANK, N.A.; )    SEC. 17200
   WASHINGTON MUTUAL BANK; )    [FRAUDULENTLY
18 WORLD SAVINGS, INC.; )    PROCURED DOCUMENTS
   GOLDEN WEST SAVINGS )    AND FAIRNESS DOCTRINE]
19 ASSOCIATION SERVICE CO.; )
20 NDEX WEST, LLC; ) **DEMAND FOR JURY TRIAL**
   LSI TITLE COMPANY; )
21 LPS AGENCY SALES AND )
   POSTING, INC.; and, DOES, 1 )
22 through 100, inclusive, )
23 )
24 Defendants. )
   _____
25

Page No. 1 of 22 /    COMPLAINT

EXHIBIT A TO NTC OF REMOVAL
PAGE 20

**COMES NOW,** the Plaintiff, Charlamaine Lozano, complaining of the Defendants, and each of them, to wit:

## INTRODUCTION

1. This is an action brought by Charlamaine, for a declaratory judgment, injunctive and equitable relief, and for compensatory, special, general, and punitive damages.

2. Charlamaine is the homeowner who claims wrongful foreclosure and disputes the title and ownership of the real property which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust, and, thus, do not have a lawful ownership or security interest in Charlamaine's real property which is described in detail here in below.

3. Charlamaine alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

4. Charlamaine further allege that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the

EXHIBIT A TO NTC OF REMOVAL
PAGE 21

Defendants have perfected any claim of title or security interest in the Home. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Notes, were legally or properly acquired.

5. Charlamaine alleges that an actual controversy has arisen and now exists between her and Defendants, and each of them. Charlamaine desires a judicial determination and declaration of their rights with regard to her Home, the Promissory Note and the Deed of Trust herein.

## THE PARTIES

6. Charlamaine are now, and at all times relevant to this action, a resident of the County of San Mateo, State of California.

7. Charlamaine allege World Savings was the lender that is named on the Deed of Trust, for the amount of $720,000.00 and recorded on 11/30/2006, doing business in the County of San Mateo, State of California. Charlamaine are informed and believe the sale of World Savings Bank, FSB to Wachovia was announced in May 2006, subsequently Wachovia was sold to Wells Fargo Bank, N.A. in 2008.

8. Defendant NDEx West LLC, (hereafter referred as "NDEX"), at all times mentioned herein was presumed to be doing business in the County of San Mateo,

EXHIBIT A TO NTC OF REMOVAL
PAGE 22

State of California, and was listed on the first Notice of Default and Notice of Trustee's Sale.

9. Defendant LSI TITLE COMPANY, is a named entity listed on the first Notice of Default and Notice of Trustee's Sale.

10. Defendant LPS AGENCY SALES AND POSTING COMPANY is a named entity listed on the first Notice of Default and Notice of Trustee's Sale

## GENERAL ALLEGATIONS

10. Charlamaine claims the Defendants did not notify him of any foreclosure proceedings against the home and wrongfully foreclosed in failing to do so. Charlamaine does now, and at all times relevant to this action are residents of the County of San Mateo, State of California. At all times relevant to this action, Charlamaine have owned the real property commonly known as 2465 Erin Place, South San Francisco CA 94080, (the "Subject Real Property").

11. Charlamaine does not know the true names, capacities, or basis for liability of Defendants sued as Doe 1 through Doe 100, as each fictitiously named Defendant is in some manner liable to Charlamaine, or claims some right, title, or interest in the subject property. Charlamaine will amend this Complaint to allege their true names and capacities when ascertained. Charlamaine is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named defendants is responsible in some manner for the injuries and damages to Charlamaine so alleged and that such injuries and damages were proximately caused by such defendants.

Page No. 4 of 22 /          COMPLAINT

12. Charlamaine is informed and believes and thereon alleges that all times herein mentioned each of the defendants was the agent, employee, servant and/or joint venturer of the remaining defendants, and in doing the things alleged, was acting within the course and scope of such agency, employment and/or joint venture.

13. Charlamaine is informed and believes, and upon such information alleges, that at times herein mentioned, that a lack of any Assignment of a Deed of Trust without proper transfer of the obligation it secures, i.e., the note, is a legal nullity.

14. Charlamaine is informed and believes, and upon such information alleges that subsequent to the date of purchase by the Charlamaine and upon such information and belief alleges, that the debt or obligation evidenced by the Note and secured by the Deed of Trust executed by Defendants regarding the Subject Real Property was not properly transferred to subsequent lenders or other parties according to California or other relevant law, and therefore the alleged beneficiary who caused a non-judicial foreclosure upon the Subject Real Property did not have the requisite ability or legal standing to do so, and/or was not the real party in interest.

15. Charlamaine executed a series of documents, including but not limited to a Promissory Note regarding the Subject Real Property. At the same time, Charlamaine also executed a Deed of Trust.

16. For all of the foregoing reasons, Charlamaine alleges a controversy surrounding the title is evident because there is no recorded Assignment of the Deed of Trust to the Note Holder. Charlamaine claims the Note and Deed of Trust

EXHIBIT A TO NTC OF REMOVAL
PAGE 24

1  are still separated and this would make the Notice of Default unlawful, since the

2  Deed of Trust cannot enforce the Note until re-united.

3       17. Additionally, Defendants have no authority to foreclose for lack of

4  standing because Defendants do not have any beneficial interest in the Note.

5       18. Further, because the nte and Deed of Trust have separated, there is no

6  ability to foreclose on the property until the note and the Deed of Trust are re-

7  united.

8  **FIRST CAUSE OF ACTION – LACK OF STANDING & QUIET TITLE**

9       19. Charlamaine did not receive a       Notice of Default or notice of Trustee

10 Sale and was not informed of the foreclosure of his home in violation of California

11 Civil Code 2923.5, and that a substantial loss of a property interest occurred in

12 violation of rights secured by the United States Constitution and due process clause

13 and equal protection clause of the Fourteenth Amendment to the United AStates

14 Constitution.

15 **SECOND CAUSE OF ACTION – LACK OF STANDING & QUIET TITLE**

16      20. Charlamaine hereby incorporates by reference each and every one of the

17 preceding paragraphs into this cause of action. Charlamaine re-allege and

18 incorporate by reference all preceding paragraphs as though fully set forth herein.

19      21. An actual controversy has arisen and now exists between Charlamaine

20 and Defendants specified hereinabove, regarding their respective rights and duties,

21 in that Charlamaine contend that Defendants specified hereinabove do not have the

22 right to foreclose on the Home because Defendants, and each of them, have failed

23 to perfect any security interest the Home.  Thus, the purported power of sale by

24 the above specified Defendants, and each of them, no longer applies. Charlamaine

25 further contend that the above specified Defendants, and each of them, do not have

1    the right to foreclose on the Home because said Defendants, and each of them, did
2    not properly comply with the terms of Defendants' own securitization
3    requirements and falsely or fraudulently prepared documents required for
4    Defendants, and each of them, to foreclose as a calculated and fraudulent business
5    practice.

6        22. Charlamaine requests that this Court find that the purported power of
7    sale contained in the Note and Deed of Trust has no force and effect at this
8    time, because Defendants' actions in the processing, handling and foreclosure
9    of this loan involved numerous fraudulent, false, deceptive and misleading
10
11   practices, including, but not limited to, violations of State and Federal laws
12   designed to protect borrowers, which has directly caused Charlamaine to be at
13   an equitable disadvantage to Defendants, and each of them. Charlamaine
14   further requests that title to the Home remain in Myrna's name, with said Deed
15
16   of Trust remaining in beneficiaries' name, during the pendency of this
17   litigation, and deem that any sale of the Home is "unlawful and void".

18
19       23. As of this date, Charlamaine are the title owner of the subject Real
20   Property. Charlamaine now have an equitable or other interest in the subject Real
21   Property due to Charlamaine claims and causes of action as set forth in this
22   Complaint.

23       24. Charlamaine also seeks redress from the Defendants identified here in
24   below for damages, for other injunctive relief, and for cancellation of written
25   instruments based upon:

EXHIBIT A TO NTC OF REMOVAL
PAGE 26

a. An invalid and unperfected security interest in Charlamaine's Home herein after described in this Complaint;

b. Void "True Sale(s)" violating New York law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Myrna's mortgage, which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions;

c. An incomplete and ineffectual perfection of a security interest in Charlamaine's Home;

d. Violations of California Business and Professions Code §17200 (Unfair Business Practices); and

e. A void or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

f. Charlamaine alleges the only entities who are owed money are the investors of the World Savings Trust, and that those investors have been paid in full by a) income from the trust; credit default swaps; TARP money; or federal bailout funds; therefore, since no party is owed any money, title to

Page No. 8 of 22 /          COMPLAINT

real property should rest exclusively in the Charlamaine, free of any encumbrances.

g. Charlamaine alleges that one or more assignments of the Lender's interest that were not recorded within the cut-off date, as the NOTE was sold, transferred and securitized into the trust, and the assignment of the deed of trust were not made in violation of the "Pooling and Service Agreement" (PSA), of the trust prospectus; thus, having invalidated the ownership of the property to the foreclosing party.

25. Charlamaine are informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, that Defendants, and each of them, claim an interest in the Subject Real Property as follows: that they are the title and/or fee simple owner of the Subject Real Property, and/or that each of the Defendants claims to have perfected a beneficial interest, security interest or other legal claim in the subject real property. Some of the unknown DOE Defendants, may also claim an interest or interests in the Subject Real Property adverse to Charlamaine as assignees, successors or otherwise.

26. Charlamaine are seeking to quiet title against the claims of Defendants, and each of them, as follows: any and all of the Defendants' alleged claims to perfection of a beneficial interest, security interest or other legal claim in the subject real property, and/or the alleged Notice of Trustee's Sale is invalid and/or without any legal or other effect. The claims of Defendants, and each of them, are therefore without any right whatever and such Defendants and each of them, have no right, title, estate, lien, or interest whatsoever in the Subject Real Property.

EXHIBIT A TO NTC OF REMOVAL
PAGE 28

27. Charlamaine are seeking to quiet title as of the date of the filing of this Complaint.

28. The Notice of Trustee's Sale states the amount of the unpaid debt.

29. Charlamaine will, when and if necessary to this action, make or provide a valid and viable tender of the actual outstanding debt that is the subject of this action and is or was secured by the Subject Real Property. However, the exact amount of this debt or obligation is unknown to Charlamaine at this time.

30. Charlamaine alleges the Note and Deed have taken two distinctly different paths. The loan was originally made by World Savings Bank and the Note was securitized into a trust not being disclosed. There is no record of any "Assignments" recorded. Any Assignments made after these time frames would be void. The trust agreement is NOT filed with the Federal Securities and Exchange Commission. The acquisitions of the assets of the subject Trust are governed under Federal Securities laws. To further address this point, the Trust Agreement clearly stipulates procedures and requirements for Assignments to be obtained for each individual Mortgage Loan pooled into the Trust. The responsible parties named in the Trust have not fulfilled their fiduciary responsibilities to both the Homeowners, and the Certificate holders of the Trust by breaking the chain of endorsements. However, there is no record of Assignments by either the Sponsor or Depositor as required by the Trust Agreement, within the appropriate time frame outlined in the Trust Agreement; thus, breaking the chain of endorsements.

31. Charlamaine alleges the promissory note in this case was made payable a trust. No recorded document suggests that it has been indorsed to any other named entity.

EXHIBIT A TO NTC OF REMOVAL
PAGE 29

32. Charlamaine disputes the title and ownership of the Defendants to the Property, in that the originating mortgage lender, and other alleged to have ownership have unlawfully sold, assigned or transferred its ownership interest in a promissory note and/or Deed of Trust, and thus do not have lawful ownership in the said real property.

33. Charlamaine alleges the Defendant cannot show proper receipt, possession, transfer, negotiation and ownership of the borrower's original promissory note, and Deed of Trust, resulting in an imperfect lien interest and claim.

34. Charlamaine allege Defendants cannot establish possession and proper transfer and endorsement of the note and Deed of Trust. Nor do Defendants have the ability to establish that the mortgage that secures the indebtedness (note), was legally or properly acquired. Charlamaine allege an actual controversy has arisen and now exists between her and Defendants, and Charlamaine desire a judicial determination and declaration of Charlamaine rights.

35. Charlamaine declares right to a judicial determination to quiet the title before a trustee sale can occur, as Charlamaine contend that Defendants have not perfected the title or true ownership of the title and subject property, and is without legal capacity to sell, convey, transfer or assign the title to any other party.

## SECOND CAUSE OF ACTION: FRAUD AND CONVERSION

36. Charlamaine hereby incorporates by reference each and every one of the preceding paragraphs into this cause of action.

37. Charlamaine alleges a the deed of trust does not authorize NDEX WEST LLC to act as trustee when neither had authority to act in the foreclosure.

Page No. 11 of 22 /                    COMPLAINT

EXHIBIT A TO NTC OF REMOVAL
PAGE 30

)

38. Charlamaine alleges NDEX WEST LLC had no authority to act in the Notice of Default and Notice of Trustee's Sale.

39. As a proximate result of the acts and/or omissions of Defendants, and each of them, have suffered the loss of title to the Subject Real Property and potentially the loss of the entire Subject Real Property itself. Accordingly, Charlamaine have been or will be damaged in amount currently believed to be in excess of $1,000,000.00, the exact amount of which will be established according to proof at the time of trial.

40. Charlamaine is informed and believes, and upon such information and belief alleges, the Defendants caused to be recorded with the San Mateo County Recorder's Office a Notice of Trustee's Sale for the Subject Real Property. The document upon which the Trustee's Sale was based is a Deed of Trust.

41. An actual controversy has arisen and now exists between Charlamaine and Defendants, and DOES 1 through 100, and each of them, concerning their respective rights and duties, in that the Charlamaine contends that none of the Defendants is the holder in due course of the Note executed by Charlamaine as part of the loan pursuant to the provisions of Article 3 or 9 of the California Commercial Code, or any related law, and the planned Trustee's Sale is invalid and contrary to California or other law; whereas Defendants, and each of them, dispute these contentions and contend that the planned Trustee's Sale is valid and binding.

42. Charlamaine claim a judicial declaration of rights are necessary and appropriate at this time to ascertain the right and ownership of subject property and for a declaration and determination as to whether Defendant may conduct a Trustee's Sale as valid and binding. Accordingly, Charlamaine request the court make a finding and issue appropriate orders stating that none of the Defendants,

1   has or had any right or interest in the Note, Deed of Trust or the Subject Real
2   Property.

3       43. Charlamaine claim Defendants failed to comply with Civil Code section
4   2923.5, which requires, before a notice of default may be filed, that a lender
5   contact the borrower in person or by phone to "assess" the borrower's financial
6   situation and "explore" options to prevent foreclosure. Here is the exact, operative
7   language from the statute: "(2) A mortgagee, beneficiary, or authorized agent shall
8   contact the borrower in person or by telephone in order to assess the borrower's
9   financial situation and explore options for the borrower to avoid foreclosure." *Id.*
10   There is nothing in section 2923.5 that requires the lender to rewrite or modify the
11   loan. In *Mabry v. The Superior Court of Orange County*, Case No. G042911,
12   Super. Ct. No. 30-2009-003090696, the Court of Appeals held that under section
13   2923.5, also known as the Perata Mortgage Relief Act2, may be enforced by a
14   private right of action. Thus, Charlamaine alleges because the Defendants have
15   failed to comply with section 2923.5, that a right to enforce such compliance
16   requires this court to act and enjoin the Defendants from a trustee sale until the
17   Defendant can show cause of having complied with California Civil Code section
18   2923.5.

19       44. Charlamaine seek for this court to declare rights and determine whether
20   the defendants, jointly or severally, nor anyone acting on their behalf, has or had
21   any right to foreclose or transfer or sell the Subject Real Property, and to determine
22   whether the defendants have a free and clear obligation of the respective note and
23   whether the Defendants have authority to release the respective trust deed in a
24   trustee sale under California Civil Code section 2924(a)(1)(c), or any related or
25   applicable law.

EXHIBIT A TO NTC OF REMOVAL
PAGE 32

45. Charlamaine claim the Defendants cannot safely discharge the Trust Deed against the subject property until the true ownership of the title is perfected and that this action creates a cloud on the title until the quiet title action is determined.

46. Charlamaine seek a judicial declaration of rights and whether any purported trustee sale by the Defendants without determination to quiet title would constitute a fraud.

## THIRD CAUSE OF ACTION: UNFAIR BUSINESS PRACTICES IN VIOLATION OF CA BUSINESS & PROFESSIONS CODE §17200 ET SEQ AND CA PENAL CODE §115.5 [FALSE &/OR FRAUDULENTLY PROCURED DOCUMENTS]

### (AGAINST ALL DEFENDANTS)

47. Charlamaine re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

### RECENT DEVELOPMENTS AND DOCUMENT FRAUD

48. On September 24, 2010, California Attorney General, Edmund G. Brown, Jr. (aka Jerry Brown) ("AG"), directed ALLY Financial, Inc., which owns GMAC, Mortgage LLC, to stop foreclosures in California until it proves it is complying with State law.

49. On October 1, 2010, the AG similarly requested that J.P. Chase Morgan stop foreclosures in California until it proves it is complying with State law.

50. Since then, Bank of America has halted foreclosures in 23 judicial foreclosure States.

Page No. 14 of 22 /          COMPLAINT

51. On or about October 11, 2010, Defendant BAC announced that it is temporarily halting foreclosures nationwide.

52. The impetus of these necessary but drastic measures stems from allegations of document fraud on the part of the banks and their servicers. This epidemic is not limited to the banks listed above, but is an industry wide problem.

53. During the securitization era, Banks and the resulting trusts, in the rush to securitized mortgages and sell them to investors, routinely ignored the critical step of obtaining mortgage assignments from the original lenders to the securities companies to the trusts.

54. Now, years later, when the companies "servicing" the trusts need to foreclose, there are no documents available to document the proper chain of title because none were originally created. As a result, banks are creating the missing documents or outsourcing the documents to companies like Lender Processing Services to produce the needed assignments. This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn deposition testimony to signing more than 500 documents a day and up to 10,000 documents a month related to foreclosures without reviewing them.

55. Due to the strict timelines and guidelines to complete a foreclosure, banks are also fabricating other documents to comply with California's foreclosure guidelines.

COMPLAINT

56. The impact of these allegations is so cogent that Old Republic National Title Company will no longer insure the title on homes foreclosed by J.P. Morgan Chase or GMAC, Mortgage LLC.

57. Charlamaine are informed and believe, and therefore allege, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code §17200 and the Unfair and Deceptive Acts and Practices statutes.

58. The above specified Defendants, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, California Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in California in violation of California *Penal Code* §115.5. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practice.

59. The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above. Further, the above specified Defendants, and each of them,

Page No. 16 of 22 /          COMPLAINT          **EXHIBIT A TO NTC OF REMOVAL PAGE 35**

knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

60. Pursuant to Sections 17200 et seq. of the California *Business and Professions Code*, unfair business practices include any unlawful, unfair, misleading or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provisions of §§17200 et seq of the California *Business and Professions Code.*

61. As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Charlamaine have incurred damages in that Charlamaine's Home has been foreclosed at the hands of the above specified Defendants, and each of them, all by reason of which Charlamaine have been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

62. As a further direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, Myrna are entitled to an order or preliminary injunction prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Home.

## UNFAIR BUSINESS PRACTICES IN VIOLATION OF
## CA BUSINESS & PROFESSIONS CODE §17200 ET SEQ
### (AGAINST ALL DEFENDANTS)

63. Charlamaine re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64. The above specified Defendants failed to undergo a diligent foreclosure and securitization process for this mortgage loan as alleged in this Complaint. They also failed to properly adjust and disclose facts and circumstances relating to the Notice of Trustee Sale by way of misleading facts. Furthermore, it is believed that the documents necessary to complete the foreclosure were fabricated or falsely authenticated by said Defendants, and each of them, as part of a fraudulent business practice to ensure that foreclosure of Charlamaine's real property was perfected.

65. Defendants, and each of them, were at all times relevant hereto aware that they had failed to meet the specific and complex requirements of their own securitization documents, resulting in the lack of perfection of any secured claims against Charlamaine, yet have actively concealed and failed to disclose such facts to Charlamaine. Instead, Defendants, and each of them, have continued to extract and collect monthly mortgage payments and related fees from Charlamaine, to Charlamaine's detriment and financial damage, as part of a deceptive, unfair, misleading and fraudulent business practice.

Page No. 18 of 22 /          COMPLAINT

66. Further, Defendants, and each of them, have engaged in unlawful, deceptive, unfair, misleading and fraudulent business practices in servicing Charlamaine's mortgage loan. When Charlamaine fell behind on their mortgage payments, Defendants began a pattern and practice of billing Charlamaine for unauthorized default charges and fees, including, but not limited to, late fees resulting from misapplied payments, improper late fees for payment posting errors, unauthorized escrow accounts, unauthorized use of "suspense" accounts, inflated fees for property inspections, inflated fees for title reports, broker price opinions, force-placed insurance and foreclosure trustee services. Charlamaine are informed and believe, and thereon allege, that as a matter of practice, Defendants billed Charlamaine at a substantial markup to the actual cost of services billed to the Defendants. Defendants' marked-up fees violate the mortgage contract because they exceed the actual cost of the services and are not reasonable to protect the alleged note holder's interest in the property and rights under the security instrument. These inflated fees and charges are routinely billed by said Defendants, and each of them, as a way to generate default-related fee income.

67. In the course of their mortgage servicing activities, Defendants, and each of them, in numerous instances, have routinely made representations to Charlamaine that are false or lack a reasonable basis, and then have compounded this wrongdoing by the assessment and collection of unauthorized fees and charges.

EXHIBIT A TO NTC OF REMOVAL
PAGE 38

68. Pursuant to §§17200 et seq. of the California Business and Professions Code, unfair business practices include any unlawful, unfair or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, was an unlawful, false, deceptive and misleading and fraudulent practice within the provisions of §§17200 et seq of the California Business and Professions Code.

69. The members of the public are likely to be deceived by the above mentioned unlawful, oppressive and fraudulent business practices.

70. As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Charlamaine have incurred damages in that Charlamaine's Home is now subject to foreclosure at the hands of said Defendants, and each of them, all by reason of which Charlamaine have been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

71. As a further direct and proximate result of the unfair business practices of Defendants, and each of them, Charlamaine are entitled to an Order for Preliminary Injunction prohibiting the above specified Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Home.

COMPLAINT          **EXHIBIT A TO NTC OF REMOVAL**
                                                                                                                    **PAGE 39**

**WHEREFORE** Charlamaine prays for relief for each cause of action as follows:

1.  For a judgment that Charlamaine are the owners in fee simple of Subject Real Property and that Defendant's, and each of them, have no interest whatsoever in the Subject Real Property;

2.  For damages according to proof at the time of trial, but currently believed to be in excess of $720,000.00;

3.  Charlamaine also requests that the Court issue an order or other appropriate document or instrument transferring title to the Subject Real Property from Defendant(s) to Charlamaine;

4.  That the court issue a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants, and each of them, their agents or employees from continuing or initiating any further legal or other activity against the Subject Real Property.

5.  That this court should enjoin the Defendant from conducting a trustee sale until this court has made a determination to quiet title.

6.  That Charlamaine be awarded any attorney's fees as allowed by law;

7.  For costs of suit incurred; and,

8.  For nominal, compensatory, and punitive damages in excess of $720,000.00 and/or an amount to be determined at trial.

9.  For such other and further relief as the court may deem just and proper.

Dated this 1st day of December, 2011.

Page No. 21 of 22 /          COMPLAINT          EXHIBIT A TO NTC OF REMOVAL
PAGE 40

1

2  Respectfully Submitted by,

3

4  CHARLAMAINE LOZANO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT A

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 42**

(Page 1 of 17)

First American Title 880405/31351IC
Escrow # 4106-2

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0044653970

NOTE AMOUNT: $720,000.00

APN # 091-031-030

2006-180835
FIRST AMERICAN TITLE COMPANY
08:00am 11/30/06 DT Fee: 55.00
Count of pages 17
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



* 2 0 0 6 0 1 8 0 8 3 5 A R *

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $900,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.      DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
        (A)  Security Instrument. This Deed of Trust, which is dated November 24, 2006, will be called the "Security Instrument."

        (B)  Borrower.  CHARLEMAINE LOZANO, AN UNMARRIED MAN  sometimes will be called "Borrower" and sometimes simply "I" or "me."

        (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

SD001A (2004-03-3)
DEFERRED INTEREST

Page 1

CA

0 0 3
LENDER'S USE ONLY

EXHIBIT A TO NTC OF REMOVAL
PAGE 43

0044653970

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$720,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **December 15, 2036** ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i) The Property which is located at **2475 ERIN PLACE, SOUTH SAN FRANCISCO, CA 94080-5335**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii) All buildings and other improvements that are located on the Described Property;

SD0018 (2004-03-3)
DEFERRED INTEREST                                        Page 2                                        CA

EXHIBIT A TO NTC OF REMOVAL
PAGE 44

0044653970

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

**1.   BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.   PAYMENTS FOR TAXES AND INSURANCE**

(A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

Page 3

EXHIBIT A TO NTC OF REMOVAL
PAGE 45

0044653970

#### (8)   Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account; or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

EXHIBIT A TO NTC OF REMOVAL
PAGE 46

0044653970

### 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)

Page 5

CA

EXHIBIT A TO NTC OF REMOVAL
PAGE 47

0044653970

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)

Page 6

CA

0044653970

### 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

EXHIBIT A TO NTC OF REMOVAL
PAGE 49

0044653970

### 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

#### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

#### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

### 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

### 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

EXHIBIT A TO NTC OF REMOVAL
PAGE 50

0044653970

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2475 ERIN PLACE, SOUTH SAN FRANCISCO, CA 94080-5335. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD0011 (2004-03-3)                                                                                          CA

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 51**

0044653970

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS
      An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

19.   CLERICAL ERRORS.
      In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage' to me which may result from any such error.

20.   LOST, STOLEN OR MUTILATED DOCUMENTS
      If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.   WAIVER OF STATUTE OF LIMITATIONS
      I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.   CAPTIONS
      The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

23.   MODIFICATION
      This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS
      If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

      (A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD0011J (2004-03-3)                                                                                    CA

EXHIBIT A TO NTC OF REMOVAL
PAGE 52

0044653970

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.     FUTURE ADVANCES
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

CA

EXHIBIT A TO NTC OF REMOVAL
PAGE 53

0044653970

26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v) the transferee executes an assumption agreement which is satisfactory to Lender, Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27. SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)

Page 12

CA

0044653970

### 28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 29. RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

### 30. STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

EXHIBIT A TO NTC OF REMOVAL
PAGE 55

0044653970

### 31.    ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

### 32.    ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

EXHIBIT A TO NTC OF REMOVAL
PAGE 56

0044653970

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____  _____  (Seal)
CHARLEMAINE LOZANO

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SC001 (2004-03-1)        |AF1 (2004-03-1)|        Page 15        CA
                         [B01 (2004-03-1)|

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO. 0044653970

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN MATEO STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

## DESCRIPTION

All that certain land situated in the State of California, County of SAN MATEO, City of SOUTH SAN FRANCISCO, described as follows:

LOT 3, IN BLOCK 10, AS SHOWN ON THAT CERTAIN MAP ENTITLED TRACT NUMBER 802 WESTBOROUGH UNIT NUMBER 1C, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, STATE OF CALIFORNIA, ON MAY 1, 1962 IN BOOK 56 OF MAPS AT PAGE(S) 14 AND 15.

EXCEPTING THEREFROM

ALL OIL, GAS, MINERALS, COALS, PETROLEUM AND KINDRED SUBSTANCES IN OR UNDER SAID PROPERTY, TOGETHER WITH THE RIGHT TO ENTER THE SUBSURFACE THEREOF AT NAY POINT FIVE HUNDRED (500) OR MORE VERTICAL FEET BELOW THE SURFACE THEREOF, AND TO TAKE AND REMOVE ANY AND ALL OF SAID SUBSTANCES FROM SAID PROPERTY AND TO REDUCE THE SAME TO POSSESSION: PROVIDED HOWEVER, THAT THE EXPLORATION, DRILLING, DEVELOPING OR EXTRACTING OF SUCH SUBSTANCES SHALL BE WITHOUT ANY IMPAIRMENT WHATSOEVER OF THE FULL USE AND ENJOYMENT OF THE ENTIRE SURFACE OF ANY LOT AND BUILDING SITE BY THE RECORD OWNER THEREOF AS RESERVED IN THE DEED FROM WESTBOROUGH HOMES, A CORPORATION, TO U. S. TITLE AND GUARANTY COMPANY, RECORDED NOVEMBER 9, 1962 IN BOOK 4329 AT PAGE 387, DOCUMENT NO. 31320-V.

APN No: 091-031-030 AND JPN 091-003-031-03 A

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of _____ SAN MATEO _____ } ss.

On _NOVEMBER 24, 2006_ before me, _WYNN A. NORONA, NOTARY PUBLIC_
personally appeared _CHARLEMAINE ~~Gabriele A~~ LOZANO_

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Wynn A. Norona_
Signature of Notary Public

──────── OPTIONAL ────────

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

### Description of Attached Document

Title or Type of Document: _DEED OF TRUST_

Document Date: _NOVEMBER 24, 2006_        Number of Pages: _16_

Signer(s) Other Than Named Above: _NONE_

### Capacity(ies) Claimed by Signer        ωη

Signer's Name: _CHARLEMAINE ~~Gabriele~~ LOZANO_

☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer is Representing: _HIMSELF_

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org        Prod. No. 5907        Reorder Call Toll-Free 1-800-876-6827

# EXHIBIT B

(Page 1 of 3)

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 091-031-030
Property Address:
2475 ERIN PLACE
SOUTH SAN FRANCISCO, CALIFORNIA
94080

DFF20100015008277

## 2010-094099

08:57am 08/23/10 ND Fee: 21.00
Count of pages 3
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 1 0 0 0 9 4 0 9 9 A R *

Space above this line for Recorder's use only

Trustee Sale No.: 20100015008277          Title Order No.: 100501511

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $17,476.62 as of 8/10/2010 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

EXHIBIT A TO NTC OF REMOVAL
PAGE 61

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No.: 20100015008277          Title Order No.: 100502511

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A. AND
F/K/A WACHOVIA MORTGAGE, FSB
c/a NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT:    NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 11/24/2006, executed by CHARLEMAINE LOZANO, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 11/30/2006 as Instrument No. 2006-180835 of official records in the Office of the Recorder of SAN MATEO County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $720,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 4/15/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 8/20/2010

NDEX WEST, LLC as Agent for Beneficiary
By: LSI Title Company, agent

By:          Nancy Balladares

VCUS_NoticeOfDefault.rpt - Record - (5/13/2010)\Ver.20

Page 1 of 2

EXHIBIT A TO NTC OF REMOVAL
PAGE 62

(Page 3 of 3)

[Page 1 of 1]

Wachovia Mortgage
P.O. Box 650058
San Antonio, TX 78265-0058

Charlemaine Lozano WACHOVIA



## Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, I, [signature]
an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding Charlemaine Lozano (hereinafter referred to as
"borrower"), Wells Fargo Bank, N.A., has met the requirement of
California Civil Code Section 2923.5 as indicated below.

( ) Wells Fargo Bank, N.A., has contacted the borrower as set
    forth in California Civil Code Section 2923.5(a)(2).

(X) Wells Fargo Bank, N.A., has tried with due diligence, as
    prescribed by California Civil Code Section 2923.5(g), to
    contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their
authorized agent to sign, on behalf of the beneficiary/authorized agent,
the Notice of Default containing the declaration required pursuant to
Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

8-18-10.
Date

_____
By:
Title: Vice President Loan Documentation

FP006 017 LAQ

Wachovia Mortgage is a division of Wells Fargo Bank, N.A.

Loan Number: 0044633970 Doc ID: 1215016153

# EXHIBIT C

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 64**

(Page 1 of 2)

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 091-031-030-9 FKA 091-031-030
Property Address:
2475 ERIN PLACE
SOUTH SAN FRANCISCO, CALIFORNIA
94080


NOTS201000015008277

**2010-142495**
8:30 am 11/24/10 NT Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder


* R 0 0 0 1 0 8 7 4 4 7 *

Space above this line for Recorder's use only

Trustee Sale No.: 20100015008277          Title Order No.: 100502511          FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A   DEED OF TRUST,   DATED 11/24/2006.   UNLESS YOU TAKE ACTION TO
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 11/30/2006 as Instrument No.
2006-180835 of official records in the office of the County Recorder of SAN MATEO County, State of CALIFORNIA.

EXECUTED BY:   CHARLEMAINE LOZANO,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other
form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:   12/20/2010          TIME OF SALE:   1:00 PM
PLACE OF SALE:   AT THE MARSHALL STREET ENTRANCE TO THE HALL OF JUSTICE AND RECORDS, 400
COUNTY CENTER, REDWOOD CITY, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
2475 ERIN PLACE, SOUTH SAN FRANCISCO, CALIFORNIA 94080
APN#:          091-031-030-9 FKA 091-031-030

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any,
shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in
said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by
said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable
estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $774,873.72.   The beneficiary
under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale,
and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be
recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
3210 EL CAMINO REAL, SUITE 200
IRVINE, CA 92602
714-730-2727
www.lpsasap.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A
DEBT.   ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

NDEx West L.L.C. as Trustee

Dated: 11/24/2010

BY: Ric Juarez
FCUS_NoticeOfTrusteeSale.rpt - Revised - 07/22/2010 - Ver-24

Page 1 of 1

## CALIFORNIA DECLARATION

This California Declaration is made pursuant to California Civil Code Section 2923.54 and is to be included with the Notice of Sale.

I, JAIMEE GONZALES, of Wachovia Mortgage, FSB ("Mortgage Loan Servicer"), declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer has obtained from the Commissioner of Corporation a final or temporary order of exemption pursuant to California Civil code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND

The timeframe for giving notice of sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

7/22/09
Date

VICE PRESIDENT
Name of Signor       Title and/or Position

# EXHIBIT D

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 67**

(Page 1 of 3)

Recording requested by:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

When Recorded Mail to and Mail Tax Statement to:
WELLS FARGO BANK, NA SUCCESSO .et al
c/o WELLS FARGO BANK, N.A., A/K/A .et al
4101 WISEMAN BOULEVARD
SAN ANTONIO, TX 78251

APN #: 091-031-030-9 FKA 091-031-038
Property Address:
1475 ERIN PLACE
SOUTH SAN FRANCISCO, CALIFORNIA 94086


TDUS201000 15008277

**2011-091153**

8:38 am 08/11/11 TD Fee: 21.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



Space above this line for Recorder's use only

Trustee Sale No. : 20100015808277   Title Order No.: 100502511

## TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:
1) The Grantee herein WAS the foreclosing beneficiary
2) The amount of the unpaid debt together with cost was        $805,629.52
3) The amount paid by the grantee at the trustee sale was       $652,342.00
4) The documentary transfer tax is                             $0.00
5) Said property is in the city of SOUTH SAN FRANCISCO

NDEx West, L.L.C., as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

**WELLS FARGO BANK, NA SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A WORLD SAVINGS BANK, FSB**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of San Mateo, State of California, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 11/24/2006 and executed by CHARLEMAINE LOZANO Trustor(s), and Recorded on 11/30/2006 as Instrument No. 2006-180835 of official records of San Mateo County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

FCUS_TrusteeDeedUponSale.rpt. (07/30/2010) / Ver-24                                     Page 1 of 3

EXHIBIT A TO NTC OF REMOVAL
PAGE 68

(Page 2 of 3)

Trustee Sale No.: 20100015008277     Title Order No.: 100502511

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 08/03/2011. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being 652,342.00 in lawful money of the United States, or by credit bid If the Grantee was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

DATED: 08/09/2011

**"This Instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"**

NDEx West, L.L.C., as Trustee

Ric Juarez

8/9/2011
DATED

State of    TEXAS    }
County of   DALLAS   }

Rebecca Ann Hetherington

On _____ 8/9/2011 _____ before me, _____ Notary Public, personally appeared
_____ Ric Juarez _____ who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument,

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

Rebecca Ann Hetherington
Notary Public
State of Texas
My Comm. Exp. 01-29-2013



LOT 3, IN BLOCK 10, AS SHOWN ON THAT CERTAIN MAP ENTITLED TRACT NUMBER 802 WESTBOROUGH UNIT NUMBER 1C, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN MATEO COUNTY, STATE OF CALIFORNIA, ON MAY 1, 1962 IN BOOK 56 OF MAPS AT PAGE(S) 14 AND 15.

EXCEPTING THEREFROM

ALL OIL, GAS, MINERALS, COALS, PETROLEUM AND KINDRED SUBSTANCES IN OR UNDER SAID PROPERTY, TOGETHER WITH THE RIGHT TO ENTER THE SUBSURFACE THEREOF AT NAY POINT FIVE HUNDERED (500) OR MORE VERTICAL FEET BELOW THE SURFACE THEREOF, AND TO TAKE AND REMOVE ANY AND ALL OF SAID SUBSTANCES FROM SAID PROPERTY AND TO REDUCE THE SAME TO POSSESSION: PROVIDED HOWEVER, THAT THE EXPLORATION, DRILLING, DEVELOPING OR EXTRACTING OF SUCH SUBSTANCES SHALL BE WITHOUT ANY IMPAIRMENT WHATSOEVER OF THE FULL USE AND ENJOYMENT OF THE ENTIRE SURFACE OF ANY LOT AND BUILDING SITE BY THE RECORD OWNER THEREOF AS RESERVED IN THE DEED FROM WESTBOROUGH HOMES, A CORPORATION, TO U. S. TITLE AND GUARANTY COMPANY, RECORDED NOVEMBER 9, 1962 IN BOOK 4329 AT PAGE 387, DOCUMENT NO. 31320-V.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT A TO NTC OF REMOVAL
PAGE 70

# EXHIBIT E

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 71**

(Page 1 of 1)

Recording Requested By Internal Revenue Service. When recorded mail to:

INTERNAL REVENUE SERVICE
PO BOX 145585, STOP 8420G
CINCINNATI, OH  45250-5585

**2010-134308**

12:03 pm 11/08/10 FX Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* R 0 0 0 1 0 7 7 3 2 1 *

For Optional Use by Recording Office

| Form 668 (Y)(c) (Rev. February 2004) | 1018 Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** |
|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #7 Lien Unit Phone: (800) 829-3903 | Serial Number 716172810 |
|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer CHARLEMAINE LOZANO

Residence      2475 ERIN PL
               S SAN FRANCISCO, CA 94080-5335

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-9646 | 09/21/2009 | 10/21/2019 | 17534.69 |
| 1040 | 12/31/2007 | XXX-XX-9646 | 03/29/2010 | 04/28/2020 | 39167.86 |
| 1040 | 12/31/2008 | XXX-XX-9646 | 08/09/2010 | 09/08/2020 | 36309.96 |

| Place of Filing | | | |
|---|---|---|---|
| | COUNTY RECORDER SAN MATEO REDWOOD CITY, CA 94063 | Total $ | 93012.51 |

This notice was prepared and signed at _____OAKLAND, CA_____ , on this, the __29th__ day of __October__ , 2010.

| Signature | Title ACS | 27-00-0008 |
|---|---|---|
| for MICHAEL W. COX | (800) 829-3903 | |

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 72**

# EXHIBIT F

(Page 1 of 2)

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 091-031-030-9 FKA 091-031-030
Property Address:
2475 ERIN PLACE
SOUTH SAN FRANCISCO, CALIFORNIA 94080

SUB20100015008277

**2010-107048**
08:47am 09/17/10 ST Fee: 18.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

2 0 1 0 0 1 0 7 0 4 8 A R 4

*Space above this line for Recorder's use only*

Trustee Sale No. : 20100015008277 Title Order No.: 100502511

## SUBSTITUTION OF TRUSTEE

WHEREAS, CHARLEMAINE LOZANO was the original Trustor, GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO. was the original Trustee, and WORLD SAVINGS BANK, FSB was the original Beneficiary Recorded on 11/30/2006 as Instrument No. 2006-180835 of official records in the Office of the Recorder of San Mateo County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, NDEx West, L.L.C., WHOSE ADDRESS IS: 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: September 7, 2010

WELLS FARGO BANK, NA SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A WORLD SAVINGS BANK, FSB

By NDeX West, L.L.C.
Its Attorney In Fact

Ric Juarez - Manager

State of   TEXAS }
County of DALLAS }

On September 7, 2010 before me, **Josie R. Molina**, Notary Public, personally appeared Ric Juarez who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

JOSIE R. MOLINA
Notary Public
State of Texas
My Comm. Exp. 11-14-2011

FCUS_SubstituteOfTrustee.rpt - 6/16/09 - Ver 27

Page 1 of 1

**EXHIBIT A TO NTC OF REMOVAL**
**PAGE 74**

NDEx West, L.L.C
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

## AFFIDAVIT

**TRUSTEE'S SALE NUMBER:** 20100015008277

I, Nina Escamilla, the undersigned, a United States Citizen declare that:

I am an employee, over the age of eighteen years, of

NDEx West, L.L.C., and/or NDEX,

whose business address is:

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

In compliance with Section 2934a(b) of the Civil Code of the State of California, Notice has been
given to the prior trustee then of record, that NDEx West, L.L.C. has been substituted as trustee
under the Deed of Trust described in the attached copy of Substitution of Trustee and a copy of
said Substitution of Trustee has been mailed prior to the recording thereof, in the manner
provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a
copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify under PENALTY OF PERJURY under the Laws of the State of California that the
foregoing is true and correct.

NDEx West, L.L.C., and/or NDEX

SEP 1 5 2010

Nina Escamilla                                    DATED
(Declarant)


SBC20100015008277

EXHIBIT F

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Charlamaine Lozano<br>2475 Erin Place<br>South San Francisco CA 94080<br><br>TELEPHONE NO.: 415-505-6728    FAX NO.: 888-880-6981<br>ATTORNEY FOR (Name): PRO SE | **RECEIVED**<br><br>DEC 0 2 2011<br><br>CLERK OF THE SUPERIOR COURT<br>SAN MATEO COUNTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch: Hall of Records

CASE NAME:
Lozano v. Wells Fargo Bank, N.A., et al

| CIVIL CASE COVER SHEET<br>[✓] Unlimited    [ ] Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER<br>**CIV** 5 1 0 0 5 3<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [✓] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary    b. [✓] nonmonetary; declaratory or injunctive relief    c. [✓] punitive
4. Number of causes of action (specify): Four
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 2, 2011
Charlamaine Lozano

_____    ▶   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)
(TYPE OR PRINT NAME)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**EXHIBIT B TO NTC OF REMOVAL
PAGE 76**

# NOTICE OF CASE MANAGEMENT CONFERENCE

Lozano

**ENDORSED FILED**
SAN MATEO COUNTY

vs.

DEC 0 2 2011

Wells Fargo Bank of the Superior Court
By_____ T. Judd
**DEPUTY CLERK**

**CIV** 5 1 0 0 5 3

Case No. _____

Date: _____ 04/11/12 _____

Time: 9:00 a.m.

Dept.  – on Tuesday & Thursday
Dept. 7 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of filing the complaint (CRC 201 7).
   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. File and serve a completed Case Management Statement at least 15 days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30 days before the date set for the Case Management Conference.

---

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

---

3. Continuances of case management conferences are highly disfavored unless good cause is shown.
4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10 days prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.
5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.
6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.
8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

**EXHIBIT B TO NTC OF REMOVAL**
**PAGE 77**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:         FAX NO. *(Optional)*: <br> E-MAIL ADDRESS *(Optional)*: <br> ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063-1655
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):*   ☐ UNLIMITED CASE    ☐ LIMITED CASE <br>      (Amount demanded    (Amount demanded is $25,000 <br>      exceeds $25,000)    or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:      Time:      Dept.:      Div.:      Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. Party or parties *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. Complaint and cross-complaint *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. Service *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. Description of case
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action)*:

Page 1 of 5

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-110 [Rev. July 1, 2011]

CASE MANAGEMENT STATEMENT

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

EXHIBIT B TO NTC OF REMOVAL
PAGE 78

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form are willing to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case have agreed to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

CASE MANAGEMENT STATEMENT

EXHIBIT B TO NTC OF REMOVAL
PAGE 79

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached *(if any):* _____**

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____

       (TYPE OR PRINT NAME)

_____

       (TYPE OR PRINT NAME)

▶ _____

       (SIGNATURE OF PARTY OR ATTORNEY)

▶ _____

       (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**EXHIBIT B TO NTC OF REMOVAL
PAGE 80**

Superior Court of California, County of San Mateo

# PART 2. CASEFLOW MANAGEMENT

## Rule 2.3  New Case Management

This rule applies to all civil cases with the exception of the following: (1) juvenile court matters; (2) probate matters; (3) family law matters; and (4) civil cases which, based on subject matter, have been assigned to a judge, or to more than one judge, for all purposes.  For rules applicable to these exceptions, see CRC 2.20, 2.30, 2.570-2.573, 2.585, 2.810-2.819, 2.830-2.834, 3.650, 3.700-3.735, 3.920-3.927, 3.1370, 3.1380-3.1385, 3.1590-3.1591, 3.1806, 5.590, 10.900-10.901, 10.910, 10.950-10.953,.

(a)  ·  Purposes and Goals

The purposes and goals of the San Mateo Superior Court Civil Case Management System effective January 1, 1992 are:

(1)  ·  To manage fairly and efficiently, from commencement to disposition, the processing of civil litigation.

(2)  To prepare the bench and bar for full implementation of the Trial Court Delay Reduction Act (A.B. 3820) on July 1, 1992; and

(3)  To encourage parties to agree to informal discovery early in the life of the case, to use standard form interrogatories and to promote alternative dispute resolution.  Nothing in these rules is intended to prevent the parties from stipulating to an earlier intervention by the court by way of a case management conference, settlement conference or any other intervention that seems appropriate.

(4)  In accordance with Sections 3.710-3.715, 10.900, 10.901 of the California Rules of Court, Local Rule 2.3 is adopted to advance the goals of Section 68603 of the Government Code and Section 2.1 of the Standards of Judicial Administration recommended by the Judicial Council.

(b)  Team concept

Beginning January 1, 1994 civil litigation will be managed primarily by a team of two program judges.

The clerk will assign the case to a program judge at the time the complaint is filed.  The case shall be managed by the assigned program judge until disposition or until the case is assigned to a trial department.

**EXHIBIT B TO NTC OF REMOVAL PAGE 81**

(A)     Time to serve may be extended for good cause: Upon ex parte application to the court, *in compliance with California Rules of Court 3.1200 –3.1206*, within 60 days of the date the complaint was filed, plaintiff may obtain an extension of time to serve to a date on or before the case management conference, if good cause is shown by declaration of counsel (or plaintiff filing in propria persona). An additional extension of the time to serve (an initial extension if the application is by a cross-complainant) may be obtained upon written application to the court upon good cause shown before the prior extension has expired. The filing of a timely application for an extension will automatically extend the time to serve by five days, whether or not the application is granted.

Good cause will be found if the declaration shows that the action is filed against a defendant who is an uninsured motorist, and the plaintiff's claim is subject to an arbitration provision in plaintiff's contract of insurance. In determining good cause in other cases, the court will give due consideration to any standards, procedures and policies which have been developed in consultation with the bar of the county through the bench-bar trial court delay committee.

(B)     Additional extension of time if uninsured motorist arbitration is pending. In addition to any extension of time obtained pursuant to subsection (5)(A) above, if an uninsured motorist arbitration is still pending between plaintiff and plaintiff's insurance carrier 30 days prior to the expiration of the extension, plaintiff may obtain an additional extension of time by: an ex parte application supported by a declaration showing the scheduled or anticipated date of the arbitration hearing and the diligence of plaintiff in pursuing arbitration.

(C)     Time to respond may be extended for good cause: Before the time to respond has expired, any party served with a complaint or cross-complaint may, with notice to all other parties in the action, make ex parte application to the court upon good cause shown for an extension of time to respond. The filing of a timely application for an extension will automatically extend the time to respond by five days, whether or not the application is granted.

(e)     Case management conference

(1)     Date of conference: Unless the parties stipulate in writing and the court orders that the case be earlier referred to arbitration, a case management conference will be set by the clerk at the time the complaint is filed. (Government Code 68616)

(2)     Attendance at the case management conference is mandatory for all parties or their attorneys of record.

(3)     Plaintiff must serve the Notice of Case Management on all parties no later than 30 calendar days before the conference, unless otherwise ordered by the Court.

(4)     The Court will deem the case to be at-issue at the time of the conference (Reference: CRC 3.714(a)) absent a showing of extraordinary circumstances.

(5)     The conference may be set at an earlier date by order of the Court or by written stipulation of the parties.

(6)     Designation of trial counsel: Trial counsel and, except for good cause shown, back-up trial counsel, must be specified at the case management conference. If such counsel is not

EXHIBIT B TO NTC OF REMOVAL
PAGE 82

(D)    At a case management conference, parties may be referred to an appropriate dispute resolution ("ADR") process (e.g., mediation, binding arbitration or neutral evaluation). If parties are referred ADR, they must redial the dedicated toll-free teleconference number immediately following their case management conference appearance and use a second CourtCall access code to telephonically appear at the ADR referral meeting with ADR staff. If a case has been referred to ADR, a party's case management conference appearance is not complete until they have also telephonically appeared at the mandatory ADR referral. If parties are referred to judicial arbitration, they do not have to appear at the ADR referral.

(f)    Case Management Statement

At least 15 calendar days before the scheduled case management conference, each party shall file with the court and serve on all other parties a completed Judicial Council Case Management Statement. If the case is set for further case management conference hearing(s), all parties must file updated Case Management Statements 15 (fifteen) calendar days prior to the scheduled hearings(s).

(g)    Appropriate Dispute Resolution, ADR, Policy Statement

The Court finds it is in the best interests of parties to litigation to participate in appropriate dispute resolution procedures, including but not limited to mediation, neutral evaluation, private or judicial arbitration, voluntary settlement conferences, and the use of special masters and referees. Therefore, all parties shall stipulate to, or be referred to, an appropriate form of dispute resolution before being set for trial, unless there is good cause to dispense with this requirement. Parties are encouraged to stipulate to judicial arbitration or ADR prior to the case management conference.

(h)    Stipulations to Arbitration

(1)    If the case is at issue, and all counsel and each party appearing in propia persona stipulate in writing to judicial arbitration prior to the case management conference, discovery will remain open following judicial arbitration. A written stipulation to judicial arbitration must be filed with the clerk and a copy immediately sent to the Master Calendar Coordinator at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference. A written stipulation to arbitrate will be deemed to be without a limit as to the amount of the award unless it expressly states otherwise.

(2)    It is the policy of this court to make every effort to process cases in a timely manner. Parties who elect or are ordered b the court to judicial arbitration must complete the arbitration hearing within the time frame specified by the court.

Parties who wish to continue the arbitration hearing after the jurisdictional time frame must submit a court provided form entitled "*Ex Parte Motion and Stipulation for continuance of Judicial arbitration Hearing.*" Parties can obtain a copy of the form by contacting the court's judicial arbitration administrator [See Local Rule 10.1(d)(1)]. Continuances without adequate grounds will not be considered. A case management judge will either grant or deny the request for continuance. If the request is denied, the case may be assigned a trial date. If the request is granted, the judge will impose a new deadline by which the arbitration must be completed.

(3)    Parties who wish to change their election from judicial arbitration to another form of ADR must file a "Stipulation and [Proposed] Order to [Mediation, Neutral Evaluation, etc.] in Lieu of [Court-Ordered] Judicial Arbitration" with the Clerk of the Court. The Stipulation must

Superior Court of California, County of San Mateo

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)     Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two weeks prior to the assigned trial date.

Cases assigned to arbitration or other form of ADR may be subjected to a settlement conference prior to the arbitration or ADR process, but will be assigned to a pre-trial settlement conference only if the arbitration/ADR procedure fails to resolve the case.

All cases which fail to resolve by the trial date will be subject to an additional settlement conference on the trial date.

*All* settlement conferences shall be subject to the requirements specified in Local Rule 2.4.

(m)     Sanctions

Sanctions pursuant to CRC 2.30 shall be imposed for any violation of the civil case management system rules. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes, including any appropriate change in calendar status of the action.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996)(Amended, effective January 1,2000) (Amended, effective January 1, 2003) (Amended effective July 1, 2003) (Amended, effective January 1, 2005)(Amended, effective January 1, 2006) (Amended, effective January 1, 2007) (Amended, effective January 1, 2010)

EXHIBIT B TO NTC OF REMOVAL
PAGE 84

# Civil Appropriate Dispute Resolution (ADR) Information Sheet
Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

## What are the Advantages of Using ADR?

⌀ *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

⌀ *Cheaper* – Parties can save on attorneys' fees and litigation costs.

⌀ *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

⌀ *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

⌀ *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

⌀ *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

⌀ Mediation - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

⌀ Judicial Arbitration – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

⌀ Binding Arbitration - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

⌀ Neutral Evaluation - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

⌀ Settlement Conference – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date.

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use
Local Court Form ADR-CV-E (New September, 2010)

[CA Rule of Court §3.221]
www.sanmateocourt.org

**EXHIBIT B TO NTC OF REMOVAL PAGE 85**

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

### What are the Advantages of Using Judicial Arbitration?

*Free* -Parties do not have to pay for the arbitrator's fee.

*Fast* -Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

*Informal* -The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

### What are the Disadvantages of Using Judicial Arbitration?

The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

### How Does Judicial Arbitration Work in San Mateo County?

During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

o   For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program." "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).



If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use [CA Rule of Court §3.221] Local Court Form ADR-CV-5 [New 54 Member, 2010] www.sanmateocourt.org

**EXHIBIT B TO NTC OF REMOVAL**
**PAGE 86**

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

    Clerk of the Superior Court, Civil Division
    Superior Court of California, County of San Mateo
    400 County Center
    Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- ❑ Original signatures for all attorneys (and/or parties in pro per);
- ❑ The name of the neutral;
- ❑ Date of the ADR session; and
- ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at (650) 599-1070.

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655 (650) 363-4711 | |
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation          ☐ Binding Arbitration (private)
☐ Neutral Evaluation            ☐ Settlement Conference (private)
☐ Non-Binding Judicial Arbitration CRC 3.810    ☐ Summary Jury Trial   ☐ Other: _____

Case Type: _____
Neutral's name and telephone number: _____ Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

Original Signatures

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

_____
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

## IT IS SO ORDERED:

Date: _____

_____
Judge of the Superior Court of San Mateo County

ADR-CV- 1 [Rev. 8/11]

FAXED

COPY

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Robert A. Bailey (# 214688)
   rbailey@afrct.com
2  Grace B. Kang (# 229464)
   gkang@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Telephone: (626) 535-1900
   Facsimile: (626) 577-7764
6
   Attorneys for Defendants
7  WELLS FARGO BANK, N.A., successor
   by merger with Wells Fargo Bank
8  Southwest, N.A., f/k/a Wachovia Mortgage,
   FSB, f/k/a World Savings Bank, FSB
9  ("Wells Fargo") (sued erroneously as
   "World Savings, Inc.") and GOLDEN
10 WEST SAVINGS ASSOCIATION
   SERVICE CO. ("Golden West")
11

**ENDORSED FILED**
**SAN MATEO COUNTY**

JAN 5 2012

Clerk of the Superior Court
By G. Jackson
DEPUTY CLERK

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        FOR THE COUNTY OF SAN MATEO

14

15 CHARLAMAINE LOZANO,                    Case No.: CIV510053

16              Plaintiff,                ASSIGNED FOR ALL PURPOSES TO:
                                          JUDGE STEVEN L. DYLINA
17 v.                                     DEPARTMENT 7

18 WELLS FARGO BANK, N.A.;               **GOLDEN WEST SAVINGS**
   WASHINGTON MUTUAL BANK;               **ASSOCIATION SERVICE CO.'S**
19 WORLD SAVINGS, INC.;                  **DECLARATION OF NON-MONETARY**
   GOLDEN WEST SAVINGS                   **STATUS**
20 ASSOCIATION SERVICE CO.;
   NDEX WEST, LLC;
21 LSI TITLE COMPANY;                    [Civil Code §2924l]
   LPS AGENCY SALES AND POSTING,
22 INC.; and, DOES, 1
   through 100, inclusive,               Trial Date;    no date set
23                                       Action Filed:  December 2, 2011
                Defendants.
24

25

26 I, Jaimee Gonzales, declare and state as follows:

27     1.   I am Vice President for Defendant Golden West Savings Association Service Co.

28 ("Golden West") in the above-referenced action. I have personal knowledge of the facts set forth

93000/FR.0137/00299978-1                    1

1   herein, and if called upon to do so, I would and could competently testify thereto.

2       2.      On December 2, 2011, plaintiff Charlamaine Lozano ("Plaintiff"), filed a

3   complaint in the Superior Court of California for the County of San Mateo, Case No. CIV510053

4   (the "Complaint"). The Complaint asserts the following causes of action: 1) Wrongful

5   Foreclosure; 2) Lack of Standing & Quiet Title; 3) Fraudulent Misrepresentation; and 4)

6   Violations of Business and Professions Code Sec. 17200 [Fraudulently Procured Documents and

7   Fairness Doctrine]. The Complaint arises out of a loan involving borrower Charlamaine Lozano

8   who originally obtained a loan from lender Wachovia Mortgage, FSB in November 2006, who at

9   the time was known as World Savings Bank, FSB, and is currently known as Wells Fargo Bank,

10  N.A. (the "Loan"). Golden West was simply the original trustee ("Trustee") named in the Deed

11  of Trust that encumbers the property that serves as security for the Loan and that is the subject of

12  the Complaint (the "Property"). Golden West was substituted out as trustee on or about

13  September 2010.

14      3.      Based on my review of the Complaint, it is my reasonable belief that Golden

15  West has been named in this action solely in its capacity as the former Trustee under the Deed of

16  Trust, and not arising out of any wrongful acts or omissions on its part in the performance of its

17  duties as the former Trustee. The basis for my reasonable knowledge or belief set forth above is

18  that Golden West has not been involved in any way with the Property, except to be named as the

19  Trustee under the Deed of Trust encumbering the Property.

20      4.      I am not aware of any evidence produced to date by plaintiff or the remaining

21  defendants, or of any facts, documents or testimony tending to suggest that Golden West

22  engaged in any misconduct in connection with the performance of its duties as Trustee, nor have

23  any of the remaining defendants filed a cross-complaint against Golden West alleging any defect

24  in the performance of its duties as Trustee, either under the Deed of Trust, or the applicable

25  statutes set forth in Civil Code §§2924, et seq.

26  ///

27  ///

28  ///

GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.'S
DECLARATION OF NON-MONETARY STATUS **B** TO NTC OF REMOVAL
PAGE 90

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   5.   Given the foregoing facts, Golden West hereby agrees to be bound by whatever

2   non-monetary Order or Judgment this Court issues with regard to the Deed of Trust.

3   I declare under penalty of perjury under the laws of the State of California that the

4   foregoing is true and correct.

5   Executed this __4th__ day of January , 2012, at San Antonio, Texas.

6

7                                                   JAIME GONZALES

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA )

3
} ss.

COUNTY OF LOS ANGELES )

4

I am employed in the County of Los Angeles, State of California. I am over the age of

5
18 years and not a party to the within action. My business address is 199 South Los Robles
Avenue, Suite 600, Pasadena, CA 91101.

6

On the date below, I served the foregoing document(s) described as:

7

**GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.'S**

8
**DECLARATION OF NON-MONETARY STATUS**

9
on the interested parties in this action by placing a true and correct copy enclosed in a sealed
envelope as follows:

10

*Plaintiff Pro Se:*

11

Charlamaine Lozano

12
2475 Erin Place
South San Francisco CA 94080

13
☒ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing

14
correspondence by mailing. Under that same practice it would be deposited with U.S.
Postal Service on that same day with postage fully prepaid at Pasadena, California in the

15
ordinary course of business. I am aware that on motion of the party served, service is
presumed invalid if postal cancellation date or postage meter date is more than one day

16
after date of deposit for mailing in affidavit.

17
I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

18

Executed on January 5, 2012, in Pasadena, California.

19

20
Vanessa Ngo

(Type or Print Name)                        (Signature of Declarant)

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  EDWARD A. TREDER
   State Bar No. 116307
2  BARRETT DAFFIN FRAPPIER
   TREDER & WEISS, LLP
3  20955 Pathfinder Road, Suite 300
4  Diamond Bar, California 91765
   (626) 915-5714 – Phone
5  (626) 915-0289 – Fax
   EdwardT@BDFGroup.com
6  File no. 20100015008277

7  Attorneys for Defendant NDeX WEST, LLC

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN MATEO

10

11 CHARLAMAINE LOZANO,                    CASE NO. CIV510053

12                      Plaintiff,        UNLIMITED CIVIL

13 vs.                                    ASSIGNED FOR ALL PURPOSES TO:
                                          HON. STEVEN L. DYLINA, DEPT. 7
14 WELLS FARGO BANK, N.A.; WASHINGTON
   MUTUAL BANK; WORLD SAVINGS, INC.;
15 GOLDEN WEST SAVINGS ASSOCIATION        DECLARATION OF NON-MONETARY
   SERVICE CO.; NDEX WEST, LLC; LSI TITLE STATUS
16 COMPANY; LPS AGENCY SALES AND
   POSTING, INC.; and DOES 1 through 100, (Cal. Civ. Code §2924l)
17 inclusive,

18                      Defendants.

19

20     I, EDWARD A. TREDER, declare as follows:

21

22     1.     I am an attorney at law, duly admitted to practice before all courts in the State of

23 California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys

24 for Defendant NDeX WEST, LLC, a named defendant in the above-captioned matter.

25

26     2.     By written instrument recorded on September 17, 2010, as Instrument No. 2010-

27 107048 in the Office of the San Mateo County Recorder, Defendant NDeX WEST, LLC was duly

28

DECLARATION OF NON-MONETARY STATUS
-1-

1    substituted as foreclosure trustee under that certain Deed of Trust executed by CHARLEMAINE

2    LOAZANO, an unmarried man, to secure a debt in the original sum of $720,000.00 in favor of World

3    Savings Bank, FSB, and recorded on November 30, 2006, as Instrument No. 2006-180835, Official

4    Records of San Mateo County, California. Said Deed of Trust created a first priority security interest

5    with power of sale against the real property described therein and commonly known as 2475 Erin

6    Place, South San Francisco, California 94080.

7

8         3.        Defendant NDeX WEST, LLC enforced the power of sale by non-judicial foreclosure

9    in compliance with California Civil Code §§ 2924 et seq. and sold the real property at public auction

10   on August 3, 2011, conveying title to WELLS FARGO BANK, SUCCESSOR BY MERGER TO

11   WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A

12   WORLD SAVINGS BANK, FSB by Trustee's Deed Upon Sale recorded on August 11, 2011, as

13   Instrument No. 11-91153, Official Records of San Mateo County, California.

14

15        4.        I have reviewed the claims alleged in Plaintiff's Complaint and the relief requested as

16   to Defendant NDeX WEST, LLC. Based thereon, Defendant NDeX WEST, LLC knows or

17   maintains a reasonable belief that it has been named as a defendant in the above-captioned action or

18   proceeding solely in its capacity as a foreclosure trustee under said Deed of Trust and that Plaintiff

19   does not assert any claims for monetary relief against Defendant NDeX WEST, LLC.

20

21        5.        Defendant NDeX WEST, LLC reasonably believes that it has not been named as a

22   defendant in the above-captioned action or proceeding due to any acts or omissions on its part in the

23   performance of its duties as foreclosure trustee because the facts alleged in the Complaint relate

24   primarily to a loan origination and/or loan servicing dispute between Plaintiff, the original mortgage

25   lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).

1   Except for its handling of the non-judicial foreclosure, Defendant NDeX WEST, LLC was not

2   involved in the origination or servicing of the subject mortgage loan.

3

4       6.     Defendant NDeX WEST, LLC agrees to be bound by any non-monetary order or

5   judgment that may be issued by the court regarding said Deed of Trust.

6

7       7.     I have personal knowledge of the foregoing facts, and if called as a witness, I would

8   testify competently thereto.

9

10       I declare under penalty of perjury under the laws of the State of California that the foregoing

11   facts are true and correct.

12

      Executed this 3rd day of January, 2012 at Diamond Bar, California.

13

14

15                      · EDWARD A. TREDER

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NON-MONETARY STATUS<br>-3-

1         <u>PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)</u>

2

3 STATE OF CALIFORNIA      )

                                )

4 COUNTY OF LOS ANGELES   )

5

6      I, Rachel Robertson, declare as follows:

7      I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8 to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar, California 91765.

9      On January 3, 2012, I served the following:
10

11                 DECLARATION OF NON-MONETARY STATUS

12 on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13 CHARLAMAINE LOZANO
   2475 ERIN PLACE
14 SOUTH SAN FRANCISCO, CA 94080

15      I am "readily familiar" with the firm's practice of collection and processing of
16 correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
17 course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for
18 mailing affidavit/declaration.

19      I declare under penalty of perjury and the laws of the State of California that the foregoing is
20 true and correct.

21      Executed on January 3, 2012, at Diamond Bar, California.

22

23                      RACHEL ROBERTSON

24

25

26

27

28

                DECLARATION OF NON-MONETARY STATUS
                        -4-

1

2
EDWARD A. TREDER
State Bar No. 116307
3
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
20955 Pathfinder Road, Suite 300
4
Diamond Bar, California 91765
(626) 915-5714 – Phone
5
(626) 915-0289 – Fax
EdwardT@BDFGroup.com
6
File No. 20100015008277

7

8
Attorneys for Defendant NDeX WEST, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
FOR THE COUNTY OF SAN MATEO

10

11
CHARLAMAINE LOZANO,                        CASE NO. CIV510053

12
                          Plaintiff,        UNLIMITED CIVIL

13
    vs:                                     ASSIGNED FOR ALL PURPOSES TO:
                                            HON. STEVEN L. DYLINA, DEPT. 7
14
WELLS FARGO BANK, N.A.; WASHINGTON
MUTUAL BANK; WORLD SAVINGS, INC.;
15
GOLDEN WEST SAVINGS ASSOCIATION            NOTICE OF FILING OF DECLARATION
SERVICE CO.; NDEX WEST, LLC; LSI TITLE      OF NON-MONETARY STATUS
16
COMPANY; LPS AGENCY SALES AND
POSTING, INC.; and DOES 1 through 100,      *(Cal. Civ. Code §2924l)*
17
inclusive,

18
                          Defendants,

19

20
TO:    ALL INTERESTED PARTIES; AND

21
TO:    THEIR ATTORNEYS OF RECORD:

22

23
        YOU ARE HEREBY NOTIFIED that Defendant NDeX WEST, LLC has filed a Declaration

24
of Non-Monetary Status in the above-captioned action or proceeding as authorized by *California*

25
*Civil Code §2924l(a)*. A true and correct copy of its Declaration of Non-Monetary Status is attached

26
hereto as Exhibit "1" and incorporated herein by this reference.

27

28

NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS
-1-

1    YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(c)*,

2  any parties who have appeared in the above-captioned action or proceeding shall have fifteen (15)

3  days from the service of the Declaration of Non-Monetary Status in which to file and serve written

4  objections to the non-monetary status of said defendant. Any written objections shall set forth the

5  factual basis on which the objections are based and shall be served upon the undersigned counsel for

6

7  said defendant. During the time for filing written objections, the time within which Defendant NDeX

8  WEST, LLC is required to file a responsive pleading to Plaintiff's Complaint shall be tolled in

9  accordance with the provisions of *California Civil Code §2924l(f)*.

10

11   YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(d)*,

12  if no timely written objections are filed and served, Defendant NDeX WEST, LLC shall not be

13  subject to any monetary awards as and for damages, attorneys fees or costs, shall be required to

14  respond to any discovery requests as a nonparty and shall be bound by any court order relating to the

15  deed of trust that is the subject of the action or proceeding.

16

17                                                                BARRETT DAFFIN FRAPPIER TREDER &
18                                                                WEISS, LLP

19

20  Dated: January 3, 2012                  By:
21                                                                EDWARD A. TREDER, Attorneys for
                                                                 Defendant NDeX WEST, LLC
22

23

24

25

26

27

28

# EXHIBIT 1

1    EDWARD A. TREDER
2    State Bar No. 116307
     BARRETT DAFFIN FRAPPIER
3    TREDER & WEISS, LLP
     20955 Pathfinder Road, Suite 300
4    Diamond Bar, California 91765
     (626) 915-5714 – Phone
5    (626) 915-0289 – Fax
     EdwardT@BDFGroup.com
6    File no. 20100015008277

7    Attorneys for Defendant NDeX WEST, LLC

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN MATEO

10

11   CHARLAMAINE LOZANO,                    CASE NO. CIV510053

12                        Plaintiff,        UNLIMITED CIVIL

13        vs.                               ASSIGNED FOR ALL PURPOSES TO:
                                            HON. STEVEN L. DYLINA, DEPT. 7
14   WELLS FARGO BANK, N.A.; WASHINGTON
     MUTUAL BANK; WORLD SAVINGS, INC.;
15   GOLDEN WEST SAVINGS ASSOCIATION        DECLARATION OF NON-MONETARY
     SERVICE CO.; NDEX WEST, LLC; LSI TITLE STATUS
16   COMPANY; LPS AGENCY SALES AND
     POSTING, INC.; and DOES 1 through 100, (Cal. Civ. Code §2924l)
17   inclusive,

18                        Defendants.

19

20        I, EDWARD A. TREDER, declare as follows:

21

22        1.    I am an attorney at law, duly admitted to practice before all courts in the State of

23   California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys

24   for Defendant NDeX WEST, LLC, a named defendant in the above-captioned matter.

25

26        2.    By written instrument recorded on September 17, 2010, as Instrument No. 2010-

27   107048 in the Office of the San Mateo County Recorder, Defendant NDeX WEST, LLC was duly

28

                        DECLARATION OF NON-MONETARY STATUS
                                       -1-

1   substituted as foreclosure trustee under that certain Deed of Trust executed by CHARLEMAINE

2   LOAZANO, an unmarried man, to secure a debt in the original sum of $720,000.00 in favor of World

3   Savings Bank, FSB, and recorded on November 30, 2006, as Instrument No. 2006-180835, Official

4   Records of San Mateo County, California. Said Deed of Trust created a first priority security interest

5   with power of sale against the real property described therein and commonly known as 2475 Erin

6

7   Place, South San Francisco, California 94080.

8       3.      Defendant NDeX WEST, LLC enforced the power of sale by non-judicial foreclosure

9

10  in compliance with California Civil Code §§ 2924 et seq. and sold the real property at public auction

11  on August 3, 2011, conveying title to WELLS FARGO BANK, SUCCESSOR BY MERGER TO

12  WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A

13  WORLD SAVINGS BANK, FSB by Trustee's Deed Upon Sale recorded on August 11, 2011, as

14  Instrument No. 11-91153, Official Records of San Mateo County, California.

15

16      4.      I have reviewed the claims alleged in Plaintiff's Complaint and the relief requested as

17  to Defendant NDeX WEST, LLC. Based thereon, Defendant NDeX WEST, LLC knows or

18  maintains a reasonable belief that it has been named as a defendant in the above-captioned action or

19  proceeding solely in its capacity as a foreclosure trustee under said Deed of Trust and that Plaintiff

20  does not assert any claims for monetary relief against Defendant NDeX WEST, LLC.

21

22      5.      Defendant NDeX WEST, LLC reasonably believes that it has not been named as a

23  defendant in the above-captioned action or proceeding due to any acts or omissions on its part in the

24  performance of its duties as foreclosure trustee because the facts alleged in the Complaint relate

25  primarily to a loan origination and/or loan servicing dispute between Plaintiff, the original mortgage

26  lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).

27

28

1  Except for its handling of the non-judicial foreclosure, Defendant NDeX WEST, LLC was <u>not</u>

2  involved in the origination or servicing of the subject mortgage loan.

3

4      6.    Defendant NDeX WEST, LLC agrees to be bound by any non-monetary order or

5  judgment that may be issued by the court regarding said Deed of Trust.

6

7      7.    I have personal knowledge of the foregoing facts, and if called as a witness, I would

8  testify competently thereto.

9

10     I declare under penalty of perjury under the laws of the State of California that the foregoing

11 facts are true and correct.

12     Executed this 3rd day of January, 2012 at Diamond Bar, California.

13

14

15                       · EDWARD A. TREDER

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NON-MONETARY STATUS
-3-

1    <u>PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)</u>

2

3    STATE OF CALIFORNIA          )
                                   )
4    COUNTY OF LOS ANGELES        )

5

6           I, Rachel Robertson, declare as follows:

7           I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8    to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar,
     California 91765.
9
            On January 3, 2012, I served the following:
10

11          NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS

12   on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13   CHARLAMAINE LOZANO
     2475 ERIN PLACE
14   SOUTH SAN FRANCISCO, CA 94080

15

16          I am "readily familiar" with the firm's practice of collection and processing of
     correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service
17   on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
     course of business. I am aware that on motion of the party served, service is presumed invalid if
18   postal cancellation date or postage meter date is more than one day after the date of deposit for
     mailing affidavit/declaration.
19

20          I declare under penalty of perjury and the laws of the State of California that the foregoing is
     true and correct.
21
            Executed on January 3, 2012, at Diamond Bar, California.
22

23                              _____

24                              RACHEL ROBERTSON

25

26

27

28
                        NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS
                                              -3-

1
EDWARD A. TREDER
2
State Bar No. 116307
BARRETT DAFFIN FRAPPIER
3
TREDER & WEISS, LLP
20955 Pathfinder Road, Suite 300
4
Diamond Bar, California 91765
(626) 915-5714 – Phone
5
(626) 915-0289 – Fax
EdwardT@BDFGroup.com
6
File No. 20100015008277
7
Attorneys for Defendants LSI TITLE COMPANY and
8
LPS AGENCY SALES AND POSTING, INC.

9
SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
FOR THE COUNTY OF SAN MATEO
11

12
CHARLAMAINE LOZANO, | CASE NO. CIV510053

13
Plaintiff, | UNLIMITED CIVIL

14
vs. | ASSIGNED FOR ALL PURPOSES TO:
HON. STEVEN L. DYLINA, DEPT. 7
15
WELLS FARGO BANK, N.A.; WASHINGTON
MUTUAL BANK; WORLD SAVINGS, INC.; |
16
GOLDEN WEST SAVINGS ASSOCIATION | DECLARATION OF NON-MONETARY
SERVICE CO.; NDEX WEST, LLC; LSI TITLE | STATUS
17
COMPANY; LPS AGENCY SALES AND |
POSTING, INC.; and DOES 1 through 100, | (Cal. Civ. Code §2924l)
18
inclusive,
19
Defendants.
20

21
I, EDWARD A. TREDER, declare as follows:

22

23
1.      I am an attorney at law, duly admitted to practice before all courts in the State of

24
California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys

25
for Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., a named

26
defendant in the above-captioned matter.

27

28

EXHIBIT B TO NTC OF REMOVAL
PAGE 104

2.      By written instrument recorded on September 17, 2010, as Instrument No. 2010-107048 in the Office of the San Mateo County Recorder, Defendant NDeX WEST, LLC was duly substituted as foreclosure trustee under that certain Deed of Trust executed by CHARLEMAINE LOAZANO, an unmarried man, to secure a debt in the original sum of $720,000.00 in favor of World Savings Bank, FSB, and recorded on November 30, 2006, as Instrument No. 2006-180835, Official Records of San Mateo County, California. Said Deed of Trust created a first priority security interest with power of sale against the real property described therein and commonly known as 2475 Erin Place, South San Francisco, California 94080.

3.      Defendant NDeX WEST, LLC enforced the power of sale by non-judicial foreclosure in compliance with California Civil Code §§ 2924 et seq. and sold the real property at public auction on August 3, 2011, conveying title to WELLS FARGO BANK, SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A WORLD SAVINGS BANK, FSB by Trustee's Deed Upon Sale recorded on August 11, 2011, as Instrument No. 11-91153, Official Records of San Mateo County, California.

4.      I have reviewed the claims alleged in Plaintiff's Complaint and the relief requested as to Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC. Based thereon, Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., know or maintain a reasonable belief that they have been named as defendants in the above-captioned action or proceeding solely in their capacity as agents of the foreclosure trustee NDeX WEST, LLC under said Deed of Trust and that Plaintiff does not assert any claims for monetary relief against Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC.

DECLARATION OF NON-MONETARY STATUS
-2-

EXHIBIT B TO NTC OF REMOVAL
PAGE 105

5.     Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., reasonably believe that they have been named as defendants in the above-captioned action or proceeding due to any acts or omissions on their part in the performance of their duties as agents of the foreclosure trustee NDeX WEST, LLC because the facts alleged in the Complaint relate primarily to a loan origination and/or loan servicing dispute between Plaintiff, the original mortgage lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).  Except for its assisting the non-judicial foreclosure, Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., agents of the foreclosure trustee NDeX WEST, LLC, were not involved in the origination or servicing of the subject mortgage loan.

6.     Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., agree to be bound by any non-monetary order or judgment that may be issued by the court regarding said Deed of Trust.

7.     I have personal knowledge of the foregoing facts, and if called as a witness, I would testify competently thereto.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true and correct.

Executed this 3rd day of January, 2012 at Diamond Bar, California

EDWARD A. TREDER

**EXHIBIT B TO NTC OF REMOVAL
PAGE 106**

1        <u>PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)</u>

2

3   STATE OF CALIFORNIA       )
                             )

4   COUNTY OF LOS ANGELES   )

5

6        I, Rachel Robertson, declare as follows:

7        I am employed in Los Angeles County, I am over the age of eighteen years and am not a party

8 to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar, California 91765.

9

       On January 3, 2012, I served the following:

10

11                      DECLARATION OF NON-MONETARY STATUS

12 on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13 Charlamaine Lozano
   2475 Erin Place

14 South San Francisco, CA 94080

15

16        I am "readily familiar" with the firm's practice of collection and processing of
correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service

17 on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
course of business. I am aware that on motion of the party served, service is presumed invalid if

18 postal cancellation date or postage meter date is more than one day after the date of deposit for
mailing affidavit/declaration.

19

20        I declare under penalty of perjury and the laws of the State of California that the foregoing is
true and correct.

21

22           Executed on January 3, 2012, at Diamond Bar, California.

23

24                             RACHEL ROBERTSON

25

26

27

28

**EXHIBIT B TO NTC OF REMOVAL
PAGE 107**

1  EDWARD A. TREDER
   State Bar No. 116307
2  BARRETT DAFFIN FRAPPIER
   TREDER & WEISS, LLP
3  20955 Pathfinder Road, Suite 300
4  Diamond Bar, California 91765
   (626) 915-5714 – Phone
5  (626) 915-0289 – Fax
   EdwardT@BDFGroup.com
6  File no. 20100015008277
7  Attorneys for Defendants LSI TITLE COMPANY and
   LPS AGENCY SALES AND POSTING. INC.

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN MATEO

10

11  CHARLAMAINE LOZANO,                    CASE NO. CIV510053

12                          Plaintiff,     UNLIMITED CIVIL

13       vs.                               ASSIGNED FOR ALL PURPOSES TO:
                                           HON. STEVEN L. DYLINA, DEPT. 7
14  WELLS FARGO BANK, N.A.; WASHINGTON
    MUTUAL BANK; WORLD SAVINGS, INC.;
15  GOLDEN WEST SAVINGS ASSOCIATION        NOTICE OF FILING OF DECLARATION
    SERVICE CO.; NDEX WEST, LLC; LSI TITLE OF NON-MONETARY STATUS
16  COMPANY; LPS AGENCY SALES AND
    POSTING, INC.; and DOES 1 through 100, *(Cal. Civ. Code §2924l)*
17  inclusive,

18                          Defendants.

19

20  TO:    ALL INTERESTED PARTIES; AND

21  TO:    THEIR ATTORNEYS OF RECORD:

22

23       YOU ARE HEREBY NOTIFIED that Defendants LSI TITLE COMPANY and LPS

24  AGENCY SALES AND POSTING, INC., as agents of Defendant NDeX WEST, LLC have filed a

25  Declaration of Non-Monetary Status in the above-captioned action or proceeding as authorized by

26  *California Civil Code §2924l(a)*. A true and correct copy of its Declaration of Non-Monetary Status

27  is attached hereto as Exhibit "1" and incorporated herein by this reference.

28

EXHIBIT B TO NTC OF REMOVAL
PAGE 108

1    YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(c)*,

2    any parties who have appeared in the above-captioned action or proceeding shall have fifteen (15)

3    days from the service of the Declaration of Non-Monetary Status in which to file and serve written

4    objections to the non-monetary status of said defendant.  Any written objections shall set forth the

5    factual basis on which the objections are based and shall be served upon the undersigned counsel for

6    said defendant.  During the time for filing written objections, the time within which Defendants LSI

7    TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., are required to file a

8    responsive pleading to Plaintiff's Complaint shall be tolled in accordance with the provisions of

9    *California Civil Code §2924l(f)*.

10   YOU ARE FURTHER NOTIFIED that, in accordance with *California Civil Code §2924l(d)*,

11   if no timely written objections are filed and served, Defendants LSI TITLE COMPANY and LPS

12   AGENCY SALES AND POSTING, INC., shall not be subject to any monetary awards as and for

13   damages, attorneys fees or costs, shall be required to respond to any discovery requests as a nonparty

14   and shall be bound by any court order relating to the deed of trust that is the subject of the action or

15   proceeding.

BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP

Dated:  January 3, 2012            By: _____

EDWARD A. TREDER, Attorneys for
Defendants LSI TITLE COMPANY and LPS
AGENCY SALES AND POSTING, INC.

NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS
-2-

**EXHIBIT B TO NTC OF REMOVAL
PAGE 109**

# EXHIBIT 1

1       EDWARD A. TREDER
       State Bar No. 116307
2      BARRETT DAFFIN FRAPPIER
3       TREDER & WEISS, LLP
     20955 Pathfinder Road, Suite 300
4      Diamond Bar, California 91765
      (626) 915-5714 – Phone
5        (626) 915-0289 – Fax
     EdwardT@BDFGroup.com
6      File No. 20100015008277

7 Attorneys for Defendants LSI TITLE COMPANY and
8 LPS AGENCY SALES AND POSTING, INC.

9       SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         FOR THE COUNTY OF SAN MATEO

11

12 CHARLAMAINE LOZANO,

13            Plaintiff,

14    vs.

15 WELLS FARGO BANK, N.A.; WASHINGTON
   MUTUAL BANK; WORLD SAVINGS, INC.;
16 GOLDEN WEST SAVINGS ASSOCIATION
   SERVICE CO.; NDEX WEST, LLC; LSI TITLE
17 COMPANY; LPS AGENCY SALES AND
   POSTING, INC.; and DOES 1 through 100,
18 inclusive,

19            Defendants.

20

| | |
|---|---|
| CASE NO. CIV510053 | |

UNLIMITED CIVIL

ASSIGNED FOR ALL PURPOSES TO:
HON. STEVEN L. DYLINA, DEPT. 7

DECLARATION OF NON-MONETARY
STATUS

*(Cal. Civ. Code §2924l)*

21    I, EDWARD A. TREDER, declare as follows:

22

23      1.    I am an attorney at law, duly admitted to practice before all courts in the State of

24 California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys

25 for Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., a named

26 defendant in the above-captioned matter.

27

28

EXHIBIT B TO NTC OF REMOVAL
PAGE 111

2.    By written instrument recorded on September 17, 2010, as Instrument No. 2010-107048 in the Office of the San Mateo County Recorder, Defendant NDeX WEST, LLC was duly substituted as foreclosure trustee under that certain Deed of Trust executed by CHARLEMAINE LOAZANO, an unmarried man, to secure a debt in the original sum of $720,000.00 in favor of World Savings Bank, FSB, and recorded on November 30, 2006, as Instrument No. 2006-180835, Official Records of San Mateo County, California. Said Deed of Trust created a first priority security interest with power of sale against the real property described therein and commonly known as 2475 Erin Place, South San Francisco, California 94080.

3.    Defendant NDeX WEST, LLC enforced the power of sale by non-judicial foreclosure in compliance with California Civil Code §§ 2924 et seq. and sold the real property at public auction on August 3, 2011, conveying title to WELLS FARGO BANK, SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A WORLD SAVINGS BANK, FSB by Trustee's Deed Upon Sale recorded on August 11, 2011, as Instrument No. 11-91153, Official Records of San Mateo County, California.

4.    I have reviewed the claims alleged in Plaintiff's Complaint and the relief requested as to Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC. Based thereon, Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC., know or maintain a reasonable belief that they have been named as defendants in the above-captioned action or proceeding solely in their capacity as agents of the foreclosure trustee NDeX WEST, LLC under said Deed of Trust and that Plaintiff does not assert any claims for monetary relief against Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING, INC.

1      5.    Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING,

2  INC., reasonably believe that they have been named as defendants in the above-captioned action or

3  proceeding due to any acts or omissions on their part in the performance of their duties as agents of

4  the foreclosure trustee NDeX WEST, LLC because the facts alleged in the Complaint relate primarily

5
   to a loan origination and/or loan servicing dispute between Plaintiff, the original mortgage lender, its
6
7  successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s). Except for its

8  assisting the non-judicial foreclosure, Defendants LSI TITLE COMPANY and LPS AGENCY

9  SALES AND POSTING, INC., agents of the foreclosure trustee NDeX WEST, LLC, were not

10 involved in the origination or servicing of the subject mortgage loan.

11

12     6.    Defendants LSI TITLE COMPANY and LPS AGENCY SALES AND POSTING,

13 INC., agree to be bound by any non-monetary order or judgment that may be issued by the court

14 regarding said Deed of Trust.

15

16     7.    I have personal knowledge of the foregoing facts, and if called as a witness, I would

17 testify competently thereto.

18

19     I declare under penalty of perjury under the laws of the State of California that the foregoing

20 facts are true and correct.

21

22     Executed this 3rd day of January, 2012 at Diamond Bar, California

23

24                            EDWARD A. TREDER

25

26

27

28

EXHIBIT B TO NTC OF REMOVAL
PAGE 113

1

<u>PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)</u>

2

3 STATE OF CALIFORNIA )
)
4 COUNTY OF LOS ANGELES )

5

6     I, Rachel Robertson, declare as follows:

7
    I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8 to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar,
California 91765.
9
    On January 3, 2012, I served the following:
10

11     NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS

12 on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13 Charlamaine Lozano
2475 Erin Place
14 South San Francisco, CA 94080

15     I am "readily familiar" with the firm's practice of collection and processing of
16 correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service
on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
17 course of business. I am aware that on motion of the party served, service is presumed invalid if
postal cancellation date or postage meter date is more than one day after the date of deposit for
18 mailing affidavit/declaration.

19     I declare under penalty of perjury and the laws of the State of California that the foregoing is
20 true and correct.

21     Executed on January 3, 2012, at Diamond Bar, California.

22

23                 _____
                 RACHEL ROBERTSON
24

25

26

27

28

    NOTICE OF FILING OF DECLARATION OF NON-MONETARY STATUS
    -3-

EXHIBIT C

B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT<br>Northern District of California | VOLUNTARY PETITION |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle).<br>Lozano, Charlemaine, Guevarra | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State).<br>40 San Pedro Road<br>Daly City, CA<br>ZIP CODE 94014 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE |  |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☑ Chapter 7 ☐ Chapter 15 Petition for<br>☐ Chapter 9 Recognition of a Foreign<br>☐ Chapter 11 Main Proceeding<br>☐ Chapter 12 ☐ Chapter 15 Petition for<br>☐ Chapter 13 Recognition of a Foreign<br>Nonmain Proceeding |
|  | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code) | **Nature of Debts**<br>(Check one box.)<br>☑ Debts are primarily consumer ☐ Debts are primarily<br>debts, defined in 11 U.S.C. business debts.<br>§ 101(8) as "incurred by an<br>individual primarily for a<br>personal, family, or house-<br>hold purpose." |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach<br>signed application for the court's consideration certifying that the debtor is<br>unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br><br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to<br>insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment<br>on 4/01/13 and every three years thereafter).*<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes<br>of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for<br>distribution to unsecured creditors. | |

**Estimated Number of Creditors**

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | Over<br>100,000 |

**Estimated Assets**

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Case3:12-cv-00183-CRB Document1 Filed01/11/12 Page 115 REMOVAL of 3

B1 (Official Form 1) (4/10)                                                                                                    Page 2

| **Voluntary Petition** <br> *(This page must be completed and filed in every case.)* | Name of Debtor(s): <br> Lozano, Charlemaine | |
|---|---|---|
|  | | |

All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.)

| Location <br> Where Filed: | Case Number: | Date Filed: |
|---|---|---|
| Location <br> Where Filed: | Case Number: | Date Filed: |

Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District:     Northern District of California | Relationship: | Judge: |

| **Exhibit A** <br><br> (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) <br><br><br> ☐   Exhibit A is attached and made a part of this petition. | **Exhibit B** <br> (To be completed if debtor is an individual <br> whose debts are primarily consumer debts.) <br><br> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). <br><br> X _____    1/4/11 <br>    Signature of Attorney for Debtor(s)     (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☑   No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

<br>

_____
(Name of landlord that obtained judgment)

<br>

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

EXHIBIT C TO NTC OF REMOVAL <br> PAGE 116

B1 (Official Form) 1 (4/10)                                                                    Page 3

| **Voluntary Petition** <br> *(This page must be completed and filed in every case.)* | Name of Debtor(s): <br> Lozano, Charlemaine |
|---|---|

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. <br> [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. <br> [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). <br><br> I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. <br><br> X _____ <br> Signature of Debtor <br><br> X _____ <br> Signature of Joint Debtor <br><br> Telephone Number (if not represented by attorney) <br> /-9-11 <br> Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. <br><br> (Check only one box.) <br><br> ☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. <br><br> ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. <br><br> X _____ <br> (Signature of Foreign Representative) <br><br> _____ <br> (Printed Name of Foreign Representative) <br><br> _____ <br> Date |
| **Signature of Attorney*** <br><br> X _____ <br> Signature of Attorney for Debtor(s) <br> Luis Alberto Jaquez, ESQ. <br> Printed Name of Attorney for Debtor(s) <br> Law Office of Amancio M. Liangco Jr. <br> Firm Name <br> 605 Market Street, Suite 605 <br> San Francisco, CA 94105 <br> Address <br> (415) 314-2761 <br> Telephone Number <br> 1-4-11 <br> Date <br><br> *In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | **Signature of Non-Attorney Bankruptcy Petition Preparer** <br><br> I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. <br><br> _____ <br> Printed Name and title, if any, of Bankruptcy Petition Preparer <br><br> Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)** <br><br> I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. <br><br> The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. <br><br> X _____ <br> Signature of Authorized Individual <br><br> _____ <br> Printed Name of Authorized Individual <br><br> _____ <br> Title of Authorized Individual <br><br> _____ <br> Date | _____ <br> Address <br> X _____ <br><br> _____ <br> Date <br><br> Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. <br><br> Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. <br><br> If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. <br><br> *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

# EXHIBIT D

Back to Search Bank Find

Your Bank at a Glance as of 11/10/2011 .

## Wells Fargo Bank, National Association (FDIC Cert: 3511) Is FDIC Insured.

**Wells Fargo Bank, National Association** has been FDIC insured since **January 1, 1934.**
It was established on **January 1, 1870.**
Its main office (headquarters) is located at:
    **101 N. Phillips Avenue**
    **Sioux Falls, South Dakota 57104**
    **County of Minnehaha**

**Wells Fargo Bank, National Association** has 6453 Domestic Branches (Offices) located in 41 state(s) and 37 Foreign Offices.
(Check to locate Branches (Offices) by state.)

Wells Fargo Bank, National Association's reported (or primary) website: http://www.wellsfargo.com:80/

**Wells Fargo Bank, National Association** is chartered as a National Bank. Therefore the primary federal regulator is the Office of the Comptroller of the Currency (OCC). For consumer assistance regarding an issue with this institution, please contact the OCC directly using http://www.helpwithmybank.gov/.

    Calculate your FDIC insurance coverage at Wells Fargo Bank, National Association using FDIC EDIE at www.fdic.gov/edie.
    Last financial information available about Wells Fargo Bank, National Association.
    Historical profile of Wells Fargo Bank, National Association.

For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
    (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
    (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *9/30/2011 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
    (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Home | Contact Us | Search | Help | SiteMap | Forms

Website Policies | Privacy Policy | USA.gov | FDIC Office of Inspector General

Freedom of Information Act (FOIA) Service Center | FDIC Open Government Webpage | No FEAR Act Data

**EXHIBIT D TO NTC OF REMOVAL**
**PAGE 118**



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in this Office, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota, (Charter No. 1).

IN TESTIMONY WHERE OF, I have

hereunto subscribed my name and caused

my seal of office to be fixed to these

presents at the Treasury Department, in the

City of Washington and District of

Columbia, this October 20, 2010.



John Walsh

Acting Comptroller of the Currency

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

### ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

### ARTICLE II - OFFICES

1. Main Office. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. Branch Offices. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. Conduct of Business. The general business of the Association shall be conducted at its main office and its branches.

### ARTICLE III - BOARD OF DIRECTORS

1. Number. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. Qualification. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. Vacancy. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to

the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. Appointment of Officers. The Board of Directors shall appoint one of its members President of this Association,.who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. Powers. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

### ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. Annual Meeting. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. Special Meetings. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. Notice of Meetings. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 Written Consents. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

### ARTICLE V - CAPITAL

1. Capitalization. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten

-2-

EXHIBIT D TO NTC OF REMOVAL
PAGE 121

Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

2. Voting Rights. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. Debt Obligations. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) Elimination of Certain Liability of Directors. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines,

-3-

EXHIBIT D TO NTC OF REMOVAL
PAGE 122

ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2) Non-Exclusivity of Rights. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3) Insurance. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

### ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

WFBArticles - Phase II - Final

-4-

EXHIBIT E

1  EDWARD A. TREDER
   State Bar No. 116307
2  MASUMI J. PATEL
3  State Bar No. 233921
4  BARRETT DAFFIN FRAPPIER
   TREDER & WEISS, LLP
5  20955 Pathfinder Road , Suite 300
6  Diamond Bar, CA 91765
   (626) 915-5714 – Phone
7  (626) 915-0289 – FAX
8  edwardt@BDFGroup.com

9  Attorneys for Defendant NDeX WEST, LLC

10

11            **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13
   JOSE ALBARRAN and ZILENA        ) Case No.: 11-cv-00548-JVS-MLG
14 ABARRAN, individually and on behalf of)
15 the General Public,              ) **DECLARATION OF RENEE**
                                    ) **JACKSON RE: CITIZENSHIP OF**
16            Plaintiffs,           ) **DEFENDANT NDeX WEST, LLC**
17                                  )
18      vs.                         )
                                    )
19 WELLS FARGO BANK, N.A.;          )
20 NDEX WEST LLC; and DOES 1 to 100, )
   inclusive,                       )
21                                  )
22            Defendants.           )
23 _____ )

24 I, RENEE JACKSON, declare as follows:

25

26     1.    I am General Counsel for The Dolan Company, a publicly traded
27 Delaware corporation (DM: NYSE) headquartered in Minneapolis, MN. In that
28 capacity, I am familiar with the corporate structure and principal place of business

                                   -1-

            **DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

1 of The Dolan Company subsidiaries and affiliates, including Defendant NDeX
2 WEST, LLC.

3     2.    NDEX WEST, LLC ("NDeX WEST") is a single-member limited
4 liability company organized in Delaware and headquartered in Texas. National
5 Default Exchange Holdings, LP ("NDeX Holdings"), is the manager and sole
6 member of NDeX WEST, and is a Delaware limited partnership headquartered in
7 Texas. The General Partner of NDeX Holdings, LP is National Default Exchange
8 Management, Inc. ("NDeX Management"), a Delaware corporation headquartered
9 in Texas.
10

11     3.    American Processing Company, LLC ("APC"), a limited liability
12 company organized and headquartered in Michigan, owns 86% of both NDeX
13 Holdings and NDeX Management. The remaining 14% of the limited partner
14 interest of NDex Holdings are owned by THP/NDEX AIV, L.P. a Delaware
15 limited partnership, headquartered in Minnesota ("THP LP"). 100% of the general
16 partnership interests of THP LP are owned by APC. 100% of the limited
17 partnership interests of THP LP are owned by THP/NDex AIV Corp. ("THP
18 Corp"), a corporation organized under the laws of Delaware and headquartered in
19 Minnesota. THP Corp is wholly owned by APC. APC is owned 94% by Dolan
20 APC LLC ("Dolan APC"), a Delaware limited liability company headquartered in
21 Minnesota and 6% is owned by individuals, all of whom are residents of the State
22 of Texas. Dolan APC is wholly owned by The Dolan Company, a Delaware
23 corporation, headquartered in Minnesota.

24     4.    As explained above, no owner or member of NDeX WEST is a citizen
25 of California.
26

27
28     5.    I have knowledge of the foregoing facts, and if called as a witness, I
would testify competently thereto.    -2-

---

**DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

1  I declare under the penalty of perjury under the laws of the United States and the
2  State of California that the foregoing facts are true and correct.
3
4  Executed this 11th day of May, 2011 at Minneapolis, MN.
5
6
7  RENEE JACKSON, Declarant
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-

**DECLARATION RE: CITIZENSHIP OF NDeX WEST, LLC**

# EXHIBIT F

1  EDWARD A. TREDER
   State Bar No. 116307
2  BARRETT DAFFIN FRAPPIER
   TREDER & WEISS, LLP
3  20955 Pathfinder Road, Suite 300
4  Diamond Bar, California 91765
   (626) 915-5714 – Phone
5  (626) 915-0289 – Fax
   EdwardT@BDFGroup.com
6  File no. 20100015008277

7  Attorneys for Defendant NDeX WEST, LLC

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF SAN MATEO

10

11  CHARLAMAINE LOZANO,                          CASE NO. CIV510053

12                        Plaintiff,             UNLIMITED CIVIL

13       vs.                                     ASSIGNED FOR ALL PURPOSES TO:
                                                 HON. STEVEN L. DYLINA, DEPT. 7
14  WELLS FARGO BANK, N.A.; WASHINGTON
    MUTUAL BANK; WORLD SAVINGS, INC.;
15  GOLDEN WEST SAVINGS ASSOCIATION             DECLARATION OF NON-MONETARY
    SERVICE CO.; NDEX WEST, LLC; LSI TITLE       STATUS
16  COMPANY; LPS AGENCY SALES AND
    POSTING, INC.; and DOES 1 through 100,      (Cal. Civ. Code §2924l)
17  inclusive,

18                        Defendants.

19

20       I, EDWARD A. TREDER, declare as follows:

21

22       1.    I am an attorney at law, duly admitted to practice before all courts in the State of

23  California, and I am the managing partner of Barrett Daffin Frappier Treder & Weiss, LLP, attorneys

24  for Defendant NDeX WEST, LLC, a named defendant in the above-captioned matter.

25

26       2.    By written instrument recorded on September 17, 2010, as Instrument No. 2010-

27  107048 in the Office of the San Mateo County Recorder, Defendant NDeX WEST, LLC was duly

28

DECLARATION OF NON-MONETARY STATUS
-1-

1  substituted as foreclosure trustee under that certain Deed of Trust executed by CHARLEMAINE

2  LOAZANO, an unmarried man, to secure a debt in the original sum of $720,000.00 in favor of World

3  Savings Bank, FSB, and recorded on November 30, 2006, as Instrument No. 2006-180835, Official

4  Records of San Mateo County, California. Said Deed of Trust created a first priority security interest

5
6  with power of sale against the real property described therein and commonly known as 2475 Erin

7  Place, South San Francisco, California 94080.

8
9      3.     Defendant NDeX WEST, LLC enforced the power of sale by non-judicial foreclosure

10  in compliance with California Civil Code §§ 2924 et seq. and sold the real property at public auction

11  on August 3, 2011, conveying title to WELLS FARGO BANK, SUCCESSOR BY MERGER TO

12  WELLS FARGO BANK SOUTHWEST, NA F/K/A WACHOVIA MORTGAGE FSB F/K/A

13  WORLD SAVINGS BANK, FSB by Trustee's Deed Upon Sale recorded on August 11, 2011, as

14  Instrument No. 11-91153, Official Records of San Mateo County, California.

15

16      4.     I have reviewed the claims alleged in Plaintiff's Complaint and the relief requested as

17  to Defendant NDeX WEST, LLC. Based thereon, Defendant NDeX WEST, LLC knows or

18  maintains a reasonable belief that it has been named as a defendant in the above-captioned action or

19  proceeding solely in its capacity as a foreclosure trustee under said Deed of Trust and that Plaintiff

20  does not assert any claims for monetary relief against Defendant NDeX WEST, LLC.

21

22      5.     Defendant NDeX WEST, LLC reasonably believes that it has not been named as a

23  defendant in the above-captioned action or proceeding due to any acts or omissions on its part in the

24  performance of its duties as foreclosure trustee because the facts alleged in the Complaint relate

25  primarily to a loan origination and/or loan servicing dispute between Plaintiff, the original mortgage

26
27  lender, its successor(s)-in-interest and/or the loan servicing agent(s) for such mortgage lender(s).

28

EXHIBIT F TO NTC OF REMOVAL
PAGE 128

1  Except for its handling of the non-judicial foreclosure, Defendant NDeX WEST, LLC was not

2  involved in the origination or servicing of the subject mortgage loan.

3

4        6.        Defendant NDeX WEST, LLC agrees to be bound by any non-monetary order or

5  judgment that may be issued by the court regarding said Deed of Trust.

6

7        7.        I have personal knowledge of the foregoing facts, and if called as a witness, I would

8  testify competently thereto.

9

10       I declare under penalty of perjury under the laws of the State of California that the foregoing

11  facts are true and correct.

12

13       Executed this 3rd day of January, 2012 at Diamond Bar, California

14

15                                   EDWARD A. TREDER

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NON-MONETARY STATUS<br>-3-

EXHIBIT F TO NTC OF REMOVAL<br>PAGE 129

1   <u>PROOF OF SERVICE BY MAIL (C.C.P. 1013a, 2015.5)</u>

2

3   STATE OF CALIFORNIA          )
                                 )
4   COUNTY OF LOS ANGELES   )

5

6          I, Rachel Robertson, declare as follows:

7          I am employed in Los Angeles County, I am over the age of eighteen years and am not a party
8   to the within entitled action; my business address is 20955 Pathfinder Road, Suite 300, Diamond Bar,
    California 91765.
9
           On January 3, 2012, I served the following:
10

11                      DECLARATION OF NON-MONETARY STATUS

12  on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13  CHARLAMAINE LOZANO
    2475 ERIN PLACE
14  SOUTH SAN FRANCISCO, CA 94080

15         I am "readily familiar" with the firm's practice of collection and processing of
16  correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service
    on that same day with postage thereon fully prepaid at Diamond Bar, California, in the ordinary
17  course of business. I am aware that on motion of the party served, service is presumed invalid if
    postal cancellation date or postage meter date is more than one day after the date of deposit for
18  mailing affidavit/declaration.

19         I declare under penalty of perjury and the laws of the State of California that the foregoing is
20  true and correct.

21         . Executed on January 3, 2012, at Diamond Bar, California.

22

23                          _____

                            RACHEL ROBERTSON
24

25

26

27

28

                       DECLARATION OF NON-MONETARY STATUS
                                       -4-

EXHIBIT F TO NTC OF REMOVAL
PAGE 130

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332**
**[DIVERSITY JURISDICTION]**

on the interested parties in said case as follows:

***Served By Means Other than Electronically Via the Court's CM/ECF System:***

| *Plaintiff Pro Se:* | *Counsel for Defendant NDeX West, LLC, LSI Title Company and LPS Agency Sales & Posting Inc.:* |
|---|---|
| Charlamaine Lozano | |
| 2475 Erin Place | Edward A. Treder, Esq. |
| South San Francisco, CA  94080 | edwardt@bdfgroup.com |
| | Deepika S. Saluja, Esq. |
| | deepikas@bdfgroup.com |
| | BARRETT DAFFIN FRAPPIER |
| | TREDER & WEISS, LLP |
| | 20955 Pathfinder Road, Suite 300 |
| | Diamond Bar, CA  91765 |
| | Tel: 626.915.5714; Fax: 909.595.7640 |

☒   **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing.  Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on January 11, 2012.

Vanessa Ngo
_____
(Type or Print Name)

_____
(Signature of Declarant)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP